NEOSHO VALLEY INVESTMENT COMPANY v. CARRIE A. CORNELL *et al.*

No. 11106.

PETITION FOR A NEW TRIAL—*General Appearance in Effect—Waiver.* A defendant corporation, after a judgment rendered against it by default, filed a petition for a new trial under section 606 of chapter 95, General Statutes of 1897 (Gen. Stat. 1889, ¶ 4671), in which it attacked the judgment upon the ground that no service of summons was had upon it whereby the court obtained jurisdiction over its person; and in said petition sought also to have the judgment vacated on non-jurisdictional grounds, as that there was no consideration for the note upon which the judgment was rendered. *Held,* that, by contesting the judgment on other than jurisdictional grounds, it entered a general appearance in the action, waiving all defects in the service of summons, and thereafter could not maintain a suit by injunction to restrain the sale of real estate upon which the judgment was decreed to be a lien.

Error from Bourbon district court; WALTER L. SIMONS, judge. Opinion filed March 11, 1899. Affirmed.

*A. D. Neale,* for plaintiff in error.

*W. C. Perry, J. G. Slonecker,* and *Perry & Crain,* for defendants in error.

The opinion of the court was delivered by

SMITH, J.: On January 15, 1897, judgment was rendered in the district court of Bourbon county in favor of plaintiffs below, Carrie A. Cornell and others, against the Neosho Valley Investment Company, for the sum of $5665, with interest at the rate of ten per cent. per annum and costs, declaring the same to be a first lien upon certain real estate located in said county, and directing foreclosure. Upon the summons in the cause was indorsed the following return:

"Received this summons May 17, 1896; executed it by delivering to the Neosho Valley Investment Company, by delivering a true and certified copy of the within summons to L. M. Bedell, its cashier and treasurer; the president or other chief officer not found in my county. May 19, 1896. J. W. BENNETT,
*Sheriff Labette County, Kansas.*"

The judgment was rendered by default, the investment company making no appearance. On April 19, 1897, the investment company filed its petition for a new trial of the foreclosure case, under section 606 of chapter 95, General Statutes of 1897 (Gen. Stat. 1889, ¶ 4671), wherein it attacked the service of summons in the cause, and alleged that L. M. Bedell, mentioned in the return of the sheriff, was not during the month of May, 1896, nor had he ever been, the cashier of the company, and that the vice-president, secretary and treasurer of the company, during the month of May, 1896, had resided in the city of Chetopa, in Labette county, Kansas.

Coupled with this attack on the service was an allegation in the petition for a new trial in substance as follows: That in March, 1886, the land foreclosed was owned by one Heilman, who on that date gave L. M. Bedell his note for $5000, due in five years, and

secured the same by a mortgage on the land described in the decree; that prior to February 29, 1892, and after said note matured, Bedell sold it, without recourse, to Cornell, Read, and Wood, who on January 1, 1892, entered into a contract with the Neosho Investment Company, whereby the latter, in consideration of the release by the former of a prior mortgage lien on the land, agreed to make all reasonable effort to sell the property on terms to be approved by Cornell, Read, and Wood, and to apply the proceeds, first, to the liquidation of the $5000 note of the company, and second, to the payment of the amount of the prior lien above referred to, the remainder, if any, to go to the investment company; that the company, in 1892, acting for Cornell and others, foreclosed the mortgage on the land given by Heilman in 1886 and took title from the sheriff in its own name, and since has had charge of it. It is admitted that the execution of the note and mortgage signed by it was the basis of the judgment rendered January 15, 1897, followed by an allegation that it was given solely for the purpose of showing that Cornell had a lien on the real estate to the amount of $5000, that Cornell and associates never advanced the company any money for the note, that it was not indebted to them, that the land was really owned by them, and that the company did not own it but held the legal title as a mere form. It was further alleged that the judgment was taken in fraud of the rights of the company, that the plaintiffs below knew all of the facts stated in the petition for a new trial, that the company was agent for Cornell and associates from 1891 to 1896, and that as such it rendered services and looked after the land for them and paid the taxes. An account showing the alleged result of the agency is attached. The statement follows that the company

had paid Cornell interest on the note amounting to
$953.50, that its president was a non-resident and ab-
sent from Kansas, except in the latter part of 1896,
and that its other officers lived in this state, that the
agreement touching the mortgage was entered into be-
tween the president and Cornell and others, and that
the other officers knew nothing about it, and that
when the summons was served on Bedell he was very
ill, was compelled immediately to go to Colorado for
his health, remaining away until the succeeding fall,
and was therefore unable to give the cause any at-
tention.

The petition for a new trial then avers that the
president of the investment company and one Jillson,
an agent of Cornell and others, made another agree-
ment similar to that first set out, that in consequence
of Bedell's illness the company knew nothing about
the action being merged into judgment until after the
rendition of said judgment, that no other officer had
any knowledge of the pendency of the action, and
that the company believed it had a good defense.
Then follows a tender of a deed in court, for the use
of Cornell and others, to the property in question, to
be delivered to them upon such terms and conditions
as the court might impose. The petition was duly
verified, as required by statute. A demurrer was filed
and, on June 5, 1897, it was sustained by the court,
but there seems to have been no judgment rendered
thereon.

The case rested in this condition until the sheriff
was about to execute the decree of foreclosure by sell-
ing the land upon which the judgment was a lien.
On September 9, 1897, this action was commenced
and a temporary injunction obtained restraining the
sale. The petition in this case, filed by the Neosho

Valley Investment Company against defendants in error, contains the same allegations as those previously incorporated in the petition for a new trial above referred to, except that the so-called defense is not pleaded. An issue being made up on this petition, an agreed statement of facts was signed and trial had. The temporary injunction was dissolved and judgment rendered against the investment company, plaintiff below, for costs, and in favor of the defendants in error.

Our view of this case renders it unnecessary to consider the questions raised on the sufficiency of the service of the summons. That question has been put past our consideration by the act of the plaintiff in error. In the petition for a new trial the investment company was not content with an attack upon the service of summons only, but sought to impeach the validity of the judgment on other grounds not jurisdictional in character. This appeal to the court for relief against the judgment, for reasons other than that the court failed to obtain jurisdiction over the person of the party defendant, involved the admission that the judgment was valid, and the plaintiff in error by this act treated it as such. In one paragraph of the petition for a new trial it is alleged that the court was without jurisdiction by reason of a fatal defect in the service. In another paragraph the judgment is attacked on the ground that there was no consideration for the note sued on, etc.

In *Adolph Cohen v. C. B. Trowbridge*, 6 Kan. 385, it is held that the filing of a motion to set aside a judgment, based partly on lack of jurisdiction and partly on error in the judgment itself, is a general appearance. ( 2 Encycl. Pl. & Pr. 632.) Where a party voluntarily appears in court it is unnecessary to in-

quire what, if any, process has been served upon him. (*Carr v. Catlin*, 13 Kan. 393.)   In *Meixell v. Kirkpatrick*, 29 Kan. 679, a party filed a demurrer to the petition upon several grounds, some jurisdictional and some not, claiming that the court had no jurisdiction of the person of the defendant, that the petition did not state facts constituting any cause of action, and that several causes of action were improperly joined. This demurrer was sustained on the ground that several causes of action were improperly joined.   Justice Brewer, speaking for the court, said :

"When served with the summons he (the defendant) appeared and filed a demurrer, which, while it alleged a lack of jurisdiction, presented also a number of other defenses, and defenses on the merits.   Such plea, by the prior adjudications of this court, was equivalent to an appearance.   A party who denies the jurisdiction of a court over his person must first present this single question.   He may not mingle with his plea to the jurisdiction other pleas which concede jurisdiction, and thereafter insist that there was error in overruling his plea to the jurisdiction.   As heretofore stated, the defendant by his demurrer raised a number of questions other than those which were jurisdictional, and invoked the judgment of the court thereon.   By such other pleas he submitted himself and his rights to the jurisdiction of the court, and can no longer be heard to say that it had no jurisdiction."

The plaintiff in error earnestly contends that this petition for a new trial, being filed after judgment, cannot be construed into an entry of appearance in the cause, for the reason that the judgment was originally based upon void service and was wholly inoperative to affect any rights or property of the defendant below.   This contention cannot be sustained under the authorities.   The case of *Life Association v. Lemke*, 40 Kan. 142, 19 Pac. 337, is substantially similar in its

facts to the case at bar. There, after judgment, defendant filed a motion on jurisdictional and non-jurisdictional grounds to set the judgment aside, and it was held that he entered a general appearance to the action.

The latest expression of this court is found in *Frazier v. Douglass*, 57 Kan. 809, 48 Pac. 36. Douglass was served with a summons, which he alleged to be void, and moved the court so to rule. Coupled with this motion was a sworn statement, in which he alleged "that he is the owner in fee, and has the valid title to the land described in the said plaintiff's petition filed in said cause, and is in the peaceable and rightful possession of the same, and that said plaintiff has no right or title thereto or to its possession; and further says that the said land is of great value, to wit, of the value of $3000." In the opinion in that case it is stated :

"As will be readily seen, the plaintiff sets up matters which were non-jurisdictional and had no bearing upon the motion he had made. Where a defendant alleges and submits to the court matters that are non-jurisdictional he recognizes the general jurisdiction of the court and waives all irregularities which may have intervened in bringing him into court. Whatever may have been the purpose of the defendant in alleging these matters, it is clear that they do not relate to the question of service or of jurisdiction. Although not entirely formal, the averments relate to the merits of the controversy, and amount to a complete answer to the allegations of the petition. When the defendant set up matters and submitted questions which were not jurisdictional, he submitted himself and his rights to the jurisdiction of the court, and he cannot be heard to say that it had no jurisdiction."

For the reasons above stated, the judgment of the district court will be affirmed.