62   79
69  517
69  518
69  773

62    79
78   634

C. J. Baker v. The Agricultural Land Company
et al.

No. 11,647.   ( 61 Pac. 412.)

1. Constructive Service—*Act of 1889 Construed.* Section 1 of chapter 107 of the Laws of 1889 recites that it amends section 72 of the General Statutes of 1868. The title reads that the same is amendatory of section 72 of chapter 80 of the General Statutes of 1868, and section 9 of the act provides that section 72 of said chapter 80 is repealed. *Held,* that it was clearly the legislative intent by the latter act to amend chapter 80 of the General. Statutes of 1868.

2. ——— *Statute Construed.* The same holding is made respecting section 2 of chapter 107 of the Laws of 1889, which is construed to be amendatory of section 73 of chapter 80 of the General Statutes of 1868.

3. ——— *Sufficient Affidavit.* An affidavit for service by publication, entitled in the cause, but with the venue stated thus: "State of Kansas, ——— county, ss.," held sufficient.

4. ——— *Collateral Attack—Estoppel by Appearance.* After decree entered against a defendant, based upon service by publication, he appeared and filed a motion to redeem the land in controversy from a lien fixed upon it in the judgment. *Held,* that this act was in effect an appearance in the suit, and that the validity of the judgment could not thereafter be questioned in an action of ejectment by the party filing said motion.

Error from Lyon district court ; Charles B. Graves, judge *pro tem.* Opinion filed June 9, 1900. Affirmed.

STATEMENT.

On October 10, 1887, Julia A. Smith and her husband, F. E. Smith, executed and delivered to the Farm Land Mortgage and Debenture Company a note for $2000, and secured the same by a mortgage on land in Lyon county. Default having been made in the payment of interest, a foreclosure suit was begun by the mortgagee on March 3, 1891, wherein F. E. Smith, Julia A. Smith, C. W. Smith and twenty-eight others

were made parties defendant. The mortgaged land was deeded by Julia A. Smith and husband to C. W. Smith, which deed was filed for record on August 13, 1890. Service was obtained on C. W. Smith by publication, and a decree entered in February, 1892, foreclosing the mortgage. Sale was made thereunder and the land bid in by Charles Humble on October 10, 1892, and a sheriff's deed issued to him. Afterward, on September 23, 1893, he conveyed the land by quitclaim deed to the Farm Land Mortgage and Debenture Company. On September 26, 1892, there was recorded in the office of the register of deeds of Lyon county a deed from C. W. Smith to C. J. Baker, purporting to convey the land in controversy, subject to the mortgage of $2000 and interest, which deed bore date of May 13, 1890.

On September 13, 1893, the Farm Land Mortgage and Debenture Company brought another suit in the district court of Lyon county on the same note and mortgage making as defendants therein C. J. Baker and Charles Humble. The petition recited and set out the entire proceedings had in the former action against Julia A. Smith and others, and alleged that, after the execution and delivery of said sheriff's deed to Humble, plaintiff first discovered that on September 26, 1892, there had been placed of record in the register of deeds' office of said county a warranty deed executed by C. W. Smith to C. J. Baker, dated May 13, 1890, and acknowledged the same day before J. A. Smith, a notary public : that plaintiff had no notice of the existence of said deed until after the sheriff's sale and the execution of the sheriff's deed ; that said F. E. Smith, one of the makers of said note and mortgage, and his son, C. W. Smith, to whom said land was conveyed, and by whom, it is purported,

Baker v. Land Company.

said land had been conveyed to C. J. Baker, had frequently refused, upon request of plaintiff, to give any information as to the whereabouts of C. J. Baker, but had offered to secure a quitclaim deed from Baker to this plaintiff if it would pay them $100. The petition also alleged that the conveyance to Baker was fraudulent and not made when it purported to be; that Humble, the purchaser at the sheriff's sale, took actual possession of the property and had ever since held the same; and prayed for an order requiring C. J. Baker to set up any claim to the premises he might have, that said mortgage be foreclosed as to him, and the amount due thereon declared a first lien. Service by publication was duly made on C. J. Baker, Humble filing an answer in the cause. On February 27, 1894, judgment was duly rendered in accordance with the prayer of said petition, excluding C. J. Baker from all interest in the land.

In the first foreclosure action, commenced March 3, 1891, against Julia A. Smith and others, the affidavit for service by publication was duly entitled in the cause, the venue, however, being stated thus : "State of Kansas, ——— County, ss."

On November 4, 1895, the Farm Land Mortgage and Debenture Company conveyed the land in controversy to defendant in error, The Agricultural Land Company. This action in ejectment was brought by Baker in December, 1896, to recover possession of the property, and for rents and profits. The court made conclusions of fact and law, and rendered judgment in favor of defendants below.

*J. A. Smith*, for plaintiff in error.

*Buck & Spencer*, for defendants in error.

The opinion of the court was delivered by

SMITH, J. : It is contended by counsel for plaintiff in error that since the enactment of chapter 107 of the Laws of 1889 there has been no statute in force in this state authorizing service by publication. This claim is based upon the fact that sections 1 and 2 of that act do not refer to the chapter of the General Statutes of 1868 which they purport to amend. Section 1 begins as follows : "Section 1. That section 72 of the General Statutes of 1868 be and the same is hereby amended so that the same shall read as follows." Then follow provisions prescribing in what cases service by publication may be had, etc. Section 2 begins : "Sec. 2. That section 73 of the General Statutes of 1868 be and the same is hereby amended so that the same shall read as follows." Then follows the requirement concerning the affidavit for publication and what it shall contain.

Chapter 80 of the General Statutes of 1868 relates to civil procedure. That it was the purpose of the legislature, by the act of 1889, to amend said chapter 80 of the General Statutes of 1868 appears to us clear. The title of said chapter 107 of the Laws of 1889 reads as follows :

"An act relating to the code of civil procedure, and amendatory of sections 72 and 73, and 643, 644, and 646 and 647 of chapter 80 of the General Statutes of 1868."

Again, section 9 of the same act reads : "Sec. 9. Original sections 72 and 73 of chapter 80 of the General Statutes of 1868 . . . are hereby repealed." Thus the title to the act and section 9 thereof expressly mentioned chapter 80 of the General Statutes of 1868 as being amended and repealed. The language of the

title of an act cannot be ignored as an aid to determine legislative intent.  (*Mitchell v. The State*, 61 Kan. 779, 60 Pac. 1055.)

The omission of the words "chapter 80," in sections 1 and 2 of chapter 107 of the Laws of 1889, constitutes the sole ground of attack on the law.  The objection is technical in a high degree, and hardly worthy of the extended comment we have made on it. In *Landrum v. Flannigan*, 60 Kan. 436, 56 Pac. 753, it was said :

"The cases in which the courts have been called upon to supply evident legislative omissions by the interpolation of words to complete the sense of the act, and thus harmonize it with the obvious legislative intent, are frequent."

The affidavit for service by publication was not void for lack of venue.  The strict rule laid down in early decisions has been greatly modified and relaxed.   In Proffatt on Notaries, section 66 (2d ed.), it is said :

"It is presumed, when no venue is stated, that the affidavit was taken within the jurisdiction of the officer taking the affidavit.   So it is held, that the absence of a venue is not fatal to an affidavit, for the important thing is, that it shall appear that the oath was administered by a person authorized to administer the same ; and the omission to state the venue may be aided, when the affidavit is offered to be used in legal proceedings, by the presumption that the officer acted within his jurisdiction, and on a prosecution for perjury, by proof extrinsic to the paper." (See, also, *Reavis v. Cowell*, 56 Cal. 588 ; *Young v. Young*, 18 Minn. 90.)

An attack is made on the judgment in the second suit, brought on September 13, 1893, by the Farm Land Mortgage and Debenture Company against C. J. Baker, wherein all his rights under the deed from C.

W. Smith were cut off by the decree. The plaintiff in error is not in a position to attack the validity or question the regularity of that judgment. After it was rendered, and in 1896, Baker, without objecting to the jurisdiction of the court, filed a motion in the cause and claimed the right to redeem. In the motion no jurisdictional question was raised. On that hearing Baker's deposition was read to sustain his claim of interest in the property. By this motion he entered his appearance in the cause. (*Investment Co. v. Cornell*, 60 Kan. 289, 56 Pac. 475.) If he complained of the judgment, he should have commenced proceedings in error to have it reversed.

Again, the court found:

"The deed from C. W. Smith to C. J. Baker was not recorded until seven months and eighteen days after the judgment in said suit No. 7715 was rendered, and was recorded pending the publication of the sheriff's notice of sale, and only fourteen days before said sale."

Neither C. W. Smith nor plaintiff in error was ever in possession of the land. Baker, therefore, was a purchaser *pendente lite* and could obtain no greater rights than his grantor, whose interest in the property had been terminated and cut off by the decree in the foreclosure action. (*Smith v. Worster*, 59 Kan. 640, 54 Pac. 676.)

There was no error in the proceedings, and the judgment of the court below will be affirmed.