## THE STATE OF KANSAS v. JOHN KNOLL.

**No. 13,868.**   (77 Pac. 580.)

### SYLLABUS BY THE COURT.

1. HOMICIDE— *Charge of Manslaughter Sufficient.* Error cannot be predicated of the overruling of a motion to quash an information of doubtful sufficiency to charge murder in the first degree when it was sufficient to charge manslaughter in the first degree, of which crime defendant was convicted.

2. —————— *Reason for Admission of "Dying Declaration."* A "dying declaration" is hearsay evidence, and is taken out of the rule excluding such evidence because of reasons of necessity, and because it is supposed that a realization on the part of the declarant of the certain and speedy approach of death affords as powerful incentive to tell the truth as does the administration of an oath.

3. —————— *Mental Condition of Declarant.* In order to render such declarations admissible it must be first shown that the declarant was not only *in articulo mortis*, but under the sense of impending death, without hope of recovery, at the time such declarations were made.

4. —————— *Statements of Deceased Insufficient.* The statements made by the deceased that he had to die of the whipping he had received from the defendant, and that he might die at any hour of any day, did not sufficiently show his sense of impending death to render his statements competent as "dying declarations."

5. INDETERMINATE-SENTENCE ACT— *Section 5686, Not 5685, of the General Statutes of 1901, Repealed by Act of 1903.* The title of chapter 375, Laws of 1903, known as the indeterminate-sentence law, recites that part of its purpose is to repeal section 5685 of the General Statutes of 1901. No mention of this section is made in the body of the act, but, instead, section 5686 is therein named as repealed. From the nature of chapter 375 and the matter therein treated, it is evident that it was intended to repeal section 5686. *Held,* that section 5685 is not repealed, and that section 5686 is repealed by implication, because chapter 375 covers the entire ground of that section and is a substitute for it; and *held, further,* that chapter 375 is not rendered invalid by reason of such error.

Appeal from Ellis district court;   J. H. REEDER, judge.   Opinion filed July 7, 1904.   Reversed.

*C. C. Coleman*, attorney-general, and *E. A. Rea*, for The State.

*W. E. Saum*, and *A. D. Gilkeson*, for appellant.

The opinion of the court was delivered by

CUNNINGHAM, J.: Alois Denning and John Knoll were friends, or on friendly terms, and had been so for some time. They were both addicted to the excessive use of alcoholic liquors. A personal encounter occurred between them on the 19th day of February, 1903, closing a convivial season of some five or six hours, during which time both had indulged in the use of intoxicants to a considerable extent. This had occurred at Denning's place of residence, which was in connection with his store.

It seems that there was a matter of disagreement between the parties concerning a report which Knoll said he had heard relative to alleged improper relations between himself and Denning's wife. This, however, did not appear to be serious, and Denning had assured Knoll that he would take such measures as were necessary to contradict any unfavorable comment and rectify any supposed wrong. However, an altercation, somewhat noisy and violent, at least, on the part of Knoll, took place between them, during which the latter broke some dishes on the table at which they were seated partaking of their dinner together. Denning remonstrated and told Knoll that he must cease these violent demonstrations or leave the premises. With a view of enforcing this requirement Denning procured a pistol, but there was little evidence that he had any purpose to use it against Knoll. With alternating periods of apparent friendliness and boisterousness, the matter finally culminated in Knoll's throwing Denning to the floor, getting upon him with

his knees, striking him with his fists, and breaking his leg in some way, not indicated by the evidence. The entire evidence pointed strongly to the conclusion that the whole affair was merely a drinking bout indulged in by the two men, resulting in this altercation, in which Denning was sadly and unnecessarily worsted. Denning was suffering from chronic alcoholism and fatty degeneration of the heart. In consequence of his injury he was put to bed, and by reason of the inactivity thus enjoined, and his previous diseased condition, self-infection resultant from the inability properly to throw off the natural secretions ensued; from which complication he died on the 23d of 'March, thirty-two days after his injury. While his physical condition prior to his injury was such as would have eventually resulted in his death, the injury which he received hastened that result. From a prosecution which resulted in his conviction of, and sentence for, manslaughter in the first degree, Knoll prosecutes this appeal.

Complaint is made of the denial of a motion to quash the information. While in terms this information charged murder in the first degree, we doubt the sufficiency of the facts, as therein set out, to support a conviction for that offense, but are of the opinion that sufficient facts are therein found to support the conviction of manslaughter in the first degree, and, hence, following *The State v. Triplett*, 52 Kan. 678, 35 Pac. 815, that no prejudicial error resulted.

What purported to be the dying declaration of Denning was introduced in evidence. It is contended that this testimony was improperly received, because it was not sufficiently shown that Denning at the time he made it believed himself to be *in extremis*. The declaration was made on March 7, sixteen days prior to his

49—69 KAN.

death; his condition thereafter and up to the time of his death is not shown.. The qualifying evidence came from the lips of Denning's sister, and the strongest language attributed to Denning, as indicating his estimate of his condition at that time, was as follows:

"He said that he had to die of the whipping of John Knoll; that he had to die; that any hour, any day, he might die; and he had to die of the whipping of John Knoll; that any hour and any day he might die; and that he had to die of the whipping he got from John Knoll. . . . I asked him what made him say so; what made him say that he had to die; and he said that the pains from the whipping John Knoll gave him, from the whipping on his head and breast where John jumped on him with his knees; that pain is what makes him know he is to die."

It is not disclosed in the record whether at the time this statement was made Denning was confined to his bed or able to be around; we may presume, however, that he was unable to be up. Nor does it appear that he had received information from any one that his condition was in any way serious—not to say dangerous. There is absolutely nothing outside of these declarations to indicate the condition of his mind concerning the probability or imminence of death.

The reasons why dying declarations are taken out of the rule which excludes hearsay testimony are those of necessity, joined with the conclusion that a realization by the declarant of the certain and speedy approach of death would be as powerful an incentive on his part to tell the truth as would the administration of an oath. So that it is familiar law that, in order to authorize the introduction of such declarations, it must be shown that there was in the mind of the deceased at the time of the making of the statement a present belief of the close and certain approach of

death ; indeed, this belief must be so present and grave that the declarant must not be merely *in articulo mortis*, but under the sense of impending death, without expectation or hope of recovery.    (*The State v. Wellington*, 43 Kan. 121, 124, 23 Pac. 156 ; *The State v. Furney*, 41 id. 115, 21 Pac. 213, 13 Am. St. Rep. 262 ; *The State v. Wilson*, 24 id. 189, 36 Am. Rep. 257 ; *The State v. Medlicott*, 9 id. 257 ; 10 A. & E. Encycl. of L., 2d ed., 366.)    It is quite true that where this condition of mind exists at the time of the making of the statement, such statement is not rendered inadmissible by a subsequently entertained belief or hope on the part of the deceased that he may recover.

Tested by the rule above stated, was the preliminary proof of the condition of Denning's mind such as to warrant the admission of the so-called "dying declaration"?  We think not.   It indicated little more than at the time the declaration was made he entertained the belief that sometime in the future the injuries received would result in his death.   When that result might occur was unknown to him ; its occurrence in the immediate future evidently was not anticipated. There was nothing indicating that he considered it imminent, or that he thought himself about to die. There was little more relative to expectation of death than what any person might truthfully say.   It was sought to strengthen the showing of the decedent's knowledge of approaching death by introducing the evidence of a priest that the "last rites" were administered to Denning, but it was not shown when this was done, what its significance was, or that Denning knew it had any significance.   This testimony added nothing to the preliminary showing.

The court instructed the jury that if the defendant was not justified in his assault he should be convicted.

-of murder in the first or second degree, or of man-
·slaughter in the first or second degree, or of assault
:and battery, thus excluding from their consideration
the question of whether he might not be guilty of
manslaughter in the fourth degree.    In this we think
the court erred.    Section 26 of the act relative to
crimes and punishments (Gen. Stat. § 2011) provides :

"The involuntary killing of another by a weapon,
or by means neither cruel nor unusual, in the heat of
passion, in any cases other than justifiable homicide,
shall be deemed manslaughter in the fourth degree."

Under the circumstances of this case, as shown by
the evidence, we think the jury might well have
found the defendant guilty under this section had
they been permitted so to do, under proper instructions.

The appellant was sentenced under what is known
as the "indeterminate-sentence law," the same being
chapter 375 of the Laws of 1903.    He now claims
that such a sentence was void because section 5686 of
the General Statutes of 1901, which provides for a
fixed sentence, was not repealed by chapter 375 of the
Laws of 1903, and, hence, being in force, he should
have received his sentence thereunder.    The title to
chapter 375 is as follows :

"An act to provide for the indeterminate sentence
of persons convicted of certain felonies, for the termi-
nation of such sentence and the release of such per-
sons, defining the duties of the directors and warden
of the penitentiary in relation thereto, and repealing
section 5685 of the General Statutes of 1901 and· all
other acts and parts of acts in conflict herewith."

It will be noted from this recitation that section
5685 was therein named as the one to be repealed,
whereas the section which was desired to be repealed,
and which, by section 10 of the act, was in terms re-
pealed, was section 5686.    Of course, there having

been an error in the title of the act in the recitation of the number of the section desired to be repealed, such section was not expressly repealed, even though correctly numbered in the body. We must, however, hold that it was repealed by clear implication. The whole scope and purpose of chapter 375 was to provide for an indeterminate sentence and to substitute it for the fixed term of sentence provided for in section 5686; hence, we hold that, although there was a failure expressly to repeal section 5686, it was repealed by implication. (*Baker v. Land Co.*, 62 Kan. 79, 61 Pac. 412.)

Other matters of error are urged which have received our attention, but we find therein no prejudice to the appellant. For the errors above noted the judgment will be reversed, and the case remanded for further proceedings.

All the Justices concurring.