No. 27,101.

Frederick G. Pfleiderer, *Appellant,* v. Lela Etta Brooks and
F. E. Brooks, her husband, and J. Maud Mower (W. M. Hill),
*Appellees.*

SYLLABUS BY THE COURT.

Descent and Distribution—*Right of Surviving Spouse—Necessity of Resi-
dence—Statute Construed*—The statutory provision (R. S. 22-108) relating to
the descent of land to one spouse upon the death of the other, provides that
one-half of such land shall be set apart in fee simple to the survivor, but it
contains the additional proviso that the survivor "shall not be entitled
to any interest under the provisions of this section in any land to which
the husband has made a conveyance when the wife at the time of the con-
veyance is not and never has been a resident of this state." The statute
is held to be legislation regarding the marital relation and the phrase "never
has been a resident of this state," is interpreted to mean that the deceased
spouse had not been a resident of the state during the existence of the
marriage relation.

Appeal from Jewell district court; William R. Mitchell, judge. Opinion
filed February 12, 1927. Affirmed.

*R. W. Turner, D. F. Stanley, R. B. Turner,* all of Mankato, and *H. A. Bru-
baker,* of Nelson, Neb., for the appellant.

*D. M. McCarthy, L. E. Weltmer,* both of Mankato, and *Jesse D. Wall,* of
Wichita, for the appellees.

The opinion of the court was delivered by

Johnston, C. J.:  In this action Frederick Pfleiderer asked for
the partition of the real property of Elizabeth Gregory Pfleiderer,
his deceased wife. She had two daughters, J. Maud Mower and
Lela Etta Brooks, who contended that plaintiff had no interest in
the property, and they having prevailed plaintiff appeals.

The plaintiff and Elizabeth Gregory Pfleiderer were married on
June 24, 1921, at Salina, Kan., when he was about seventy-six years
of age, and she was about seventy-three. He had several children
by a former wife and she had two daughters by a former husband.
Each owned property of about the same value at the time of the
marriage. She had a half section of land in Jewell county, which
included the homestead of herself and her former husband. Prior
to the marriage she was a resident of Kansas, and while he had re-
sided in this state in his earlier years, it appears that he left the

Appeal and Error, 4 C. J. p. 650 n. 37.   Descent and Distribution, 18 C. J. p.
849 n. 75.   Statutes, 36 Cyc. pp. 1106 n. 29, 1107 n. 34, 1114 n. 96.

state about thirty-nine years before the marriage and had not been a resident of the state since that time. After their marriage she went with him to Superior, Neb., where they built and maintained a home until her death on June 13, 1925. It was claimed by defendants that prior to their marriage an antenuptial contract was made, the validity of which is challenged by plaintiff. It contained among other things a provision that each should hold his or her property independent of the other, and upon the death of either the other should not have nor assert any interest, estate or title in the property of the other under the laws of any state by reason of survivorship, and that the agreement should stand as a consent in writing by each to any will or conveyance made by the other. On February 8, 1924, Elizabeth Gregory Pfleiderer executed a conveyance of her land to her daughters, reserving to herself a life estate in it. Plaintiff did not join in the execution of the deed, and it was delivered to Maud Mower on July 10, 1924, and to Lela Etta Brooks on March 5, 1925. It was filed for record on June 13, 1925. It is further disclosed in the record that on June 24, 1924, Mrs. Pfleiderer had made a will by which she gave plaintiff $25, reciting in the will that this bequest was made on consideration of an antenuptial contract, which the parties had made and which plaintiff had destroyed without the testator's consent subsequent to the marriage, and there was attached to the will an unsigned copy of the antenuptial contract. In the will she recognized and confirmed the deed executed to her daughters on February 8, 1924, and gave all the residue of her property of every kind to her two daughters in equal parts. The will was admitted to probate in Nebraska after a trial in the district court. That court excluded the copy of the antenuptial contract, holding that proper proof of its execution had not been made and that such a document without proof of execution could not be incorporated as a part of the will. The will, however, was admitted to probate on other grounds. Shortly after the death of Mrs. Pfleiderer, the plaintiff brought this action claiming that he was entitled to a half interest in the land owned by her under the law of descents and distributions.

The controlling question in the case is the interpretation of R. S. 22-108, which provides:

"One-half in value of all the real estate in which the husband, at any time during the marriage, had a legal or equitable interest, which has not been sold on execution or other judicial sale, and not necessary for the payment of debts,

and of which the wife has made no conveyance, shall, under the direction of the probate court, be set apart by the executors or administrators as her property, in fee simple, upon the death of the husband, if she survives him: *Provided,* That the wife shall not be entitled to any interest, under the provisions of this section, in any land to which the husband has made a conveyance, when the wife at the time of the conveyance is not and never has been a resident of this state. Continuous cohabitation as husband and wife is presumptive evidence of marriage, for the purpose of giving the right aforesaid."

This provision is followed by another which declares:

"All the provisions hereinbefore made in relation to the widow of a deceased husband shall be applicable to the husband of a deceased wife. Each is entitled to the same rights or portion in the estate of the other, and like interests shall in the same manner descend to their respective heirs. The estates of dower and by courtesy are abolished." (R. S. 22-127.)

The plaintiff did not join in the execution of the deed conveying the land to the daughters of his wife, and he contends that as she owned land during the marriage which had not been sold on execution or judicial sale, and was not necessary to pay debts, and had not been conveyed by her prior to the marriage, one-half of it descended to him inasmuch as he had been a resident of the state some years before the marriage. The defendants' contention is that the act was dealing with the marital relations of husband and wife, and that the rights defined in the provision quoted did not arise until the marital status began. They insist that the legislature was making a provision for a status of those standing in the relation of husband and wife and not to individuals generally. It is further insisted that the provision giving one spouse the right to make conveyance of land where the other is not and never has been a resident of the state, means a resident of the state while the marriage relation existed. It is clear that the legislature was prescribing rules regulating the marital relation and fixing the rights which husband and wife have in the lands of the other spouse. There was no attempt to give rights to land which the deceased spouse had owned or disposed of prior to the marriage nor to base any rights on conditions which existed before the parties became husband and wife. Plaintiff urges that the words used as to residence, "and never has been a resident of the state," are unambiguous and should be given their ordinary signification and effect. He contends that there should be no departure from the natural meaning on account of consequences or public policy nor even what the court may deem

to be the better policy, and that if the legislature had sought to restrict the term to the declaration of the marital relation it would have said so. The general rule is that words in common use are to be given their natural and ordinary meaning, but it is also the rule that they are to be examined and interpreted in connection with the subject matter to which they relate. It has been said that "a cardinal canon of construction to which all mere rules of interpretation are subordinate, is that the intent when ascertained, governs." (*State v. Bancroft,* 22 Kan. 170.) If a term is inappropriate or open to more than one meaning, we should look to the context and give effect to the manifest intention of the legislature. "This (it has been said) is only making the naked letter yield to its obvious intent." (*Coney v. City of Topeka,* 96 Kan. 46, 149 Pac. 639.) It is manifest that the legislature was dealing with the status and not merely with individuals. Its attention was directed to the marital relation, and it prescribed a rule for the descent of land which the deceased spouse had had during the marriage. The opening provision of the statute relates to land owned by the *husband* at any time during the marriage of which the *wife* has made no conveyance and it provides that it shall be set apart to her. There is a further provision that the *wife* shall not be entitled to an interest in land which the husband has conveyed when the *wife* was not and never had been a resident of the state. The last sentence of the section indicates the obvious purpose of confining the operation of the act to the marital status where it provides that "continuous cohabitation as husband and wife is presumptive evidence of marriage for the purpose of giving the right aforesaid." We think it is reasonably clear that the clause relating to residence was intended to apply only to parties who occupied the relation of husband and wife, and that the restriction means that the wife as wife has never been a resident of the state. It is not easy to imply an intention of the legislature to make the circumstance that a spouse when an infant in arms was brought to the state and resided here with her parents for a few months, and then was taken to another state by them, should be held to be within the restriction clause if after maturity she returned to and lived with her husband in the state. Rights as to the descent of land are based on the marital status, and the surviving wife cannot claim a share of property conveyed by the husband when she was a nonresident of the state at the time of the

conveyance and never had been while occupying the relation of wife. The statute was before the court in *Kennedy v. Haskell*, 67 Kan. 612, 73 Pac. 913, and *McKelvey v. McKelvey*, 75 Kan. 325, 89 Pac. 663, but in neither of them was the question involved here considered or decided. In *Buffington v. Grosvenor*, 46 Kan. 730, 27 Pac. 137, the policy of the law was discussed to some extent and it was said "for reasons that were deemed sufficient the legislature made the signature and conveyance of the nonresident wife unnecessary. The fact that the wife did not accompany her husband to Kansas or had abandoned him and gone to another state and may or may not have obtained a divorce elsewhere, thus leaving the status of the parties in doubt, and making it difficult to obtain a perfect transfer of land, in many cases may have been deemed sufficient reason for prescribing this rule of conveyance." (p. 735.) If the words "never has been a resident of the state" had been in an act dealing with persons generally instead of those occupying the marriage relation, plaintiff's contention must prevail, but the words used in an act must be interpreted in connection with its obvious purpose, and if that purpose is clear, effect must be given to the intention of the legislature. In *Van Doren v. Etchen*, 112 Kan. 380, 211 Pac. 144, where a statute was involved which imposed a penalty on the refusal of a mortgagee to enter satisfaction of a mortgage on real estate where the same was paid or a recorded mortgage in which the mortgagor has no interest, and it was interpreted in consonance with the manifest intention of the legislature, that the expression, "mortgagor, his heirs or assigns," to mean the party in interest, the party aggrieved by the recording of an invalid mortgage. In the later case of *Pitts v. Milling Co.*, 117 Kan. 626, 233 Pac. 114, the words "rent due" in a lease for a proportion of a crop where a purchaser of the crop had notice of an existing lien, relate only to the proportion of value of the crop and do not limit recovery to rent in arrears, this being the obvious intent of the legislature.

We conclude that the trial court correctly interpreted the statute as well as the validity of the deed to the defendants, which had not been signed by plaintiff. This view of the statute renders it unnecessary to consider other questions relating to a will and an antenuptial contract.

The judgment is affirmed.