No. 29,098.

The State of Kansas, *Appellee*, v. Ray Close, *Appellant*.

(287 Pac. 599.)

Opinion filed May 3, 1930.

*Carr W. Taylor* and *C. O. McGill*, both of Hutchinson, for the appellant.

*William A. Smith*, attorney-general, *Roland Boynton*, assistant attorney-general, *Charles Hall*, county attorney, and *John Fontron*, of Hutchinson, for the appellee.

The opinion of the court was delivered by

Dawson, J.: The defendant was convicted of the theft of an automobile. He assigns error on the insufficiency of the evidence, and questions the validity of the sentence.

On November 13, 1928, a Studebaker automobile, 1924 model, engine number 69461, belonging to O. F. Wright, of Hutchinson, was stolen. Early in February, 1929, such an automobile was discovered by local police officers in a garage behind defendant's place

of abode and eventually identified as the stolen car. It had been partly disguised by the nickeled work around the radiator having been painted.

The state's evidence tended to show that defendant had frequently been seen driving the car in and around Hutchinson at various times between the date it was stolen and the time it was discovered and identified. It was also shown that he had borrowed a small paint gun such as could be used for painting the car to disguise it. It was also shown that he had rented a stall in a three-stall garage, in one of which the automobile was sometimes seen after it was stolen. The automobile was not seen standing in the particular stall which defendant had rented, but it was shown that defendant and others had placed a [stolen?] tractor in defendant's stall, and that the owner of the garage was aware that defendant was sometimes putting the automobile in a vacant stall in the same garage. It was also shown that defendant had brought the car to a repair shop to have the starter repaired, and at another time he sent its generator to the same workshop for repair, and that defendant later called for it. The last two incidents occurred about Christmas time, 1928. Other incidents showing defendant's possession of the car and his exercise of dominion over it were abundantly shown to make a *prima facie* case against him for its theft under the familiar and oft-repeated rule of this court touching unexplained possession of recently stolen property. (*State v. Cassidy,* 12 Kan. 550; *State v. Bell,* 109 Kan. 767, 201 Pac. 1110; *State v. Bartholomew,* 116 Kan. 590, 227 Pac. 366; *State v. Wood,* 118 Kan. 58, 233 Pac. 1029.)

It is contended, however, that the force of this rule was altogether dissipated because a codefendant, Virgil Shaw, confessed at the preliminary examination that he had stolen the automobile. Defendant argues that such confession by another person was a complete and satisfactory explanation which entirely destroyed the state's case against defendant based on his possession of the recently stolen automobile. We think not. How it came into defendant's possession was just as much an incriminating dilemma for him to explain as ever. He still continued under the risk of nonpersuasion. (*State v. Bell,* supra.) It seems needless to elaborate on the proposition that more than one person may participate in the theft of an automobile, and the fact that one of them confesses his guilt contributes little or nothing towards the exculpation of the others. Another point urged against the evidence is that defendant's pos-

session of the stolen car was at too remote a time after its theft to have any probative value. We think not. It was stolen on November 13. One witness testified that he saw defendant driving it "the latter part of November." The error assigned on the insufficiency of the evidence is not sustained.

The next error assigned relates to the sentence which was imposed on defendant—ten to thirty years in the penitentiary. After the verdict of guilty was rendered and the cause came on for judgment and sentence, the state, upon due notice to defendant, adduced proof that defendant had been previously convicted of grand larceny for the theft of a cow and had served a term of imprisonment in the state penitentiary therefor. Pursuant thereto the defendant was sentenced as above. The pertinent statutes are a part of one section of the crimes act and the statute of 1927 known as the habitual-criminal act. These read:

"Persons convicted of grand larceny shall be punished in the following cases as follows: First, for stealing any automobile or motor vehicle, by confinement at hard labor for not less than five years and not more than fifteen years; . . ." (R. S. 21-534.)

"AN ACT relating to punishment for felony, providing additional punishment for second and third convictions.

"*Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. Every person convicted a second time of felony, the punishment of which is confinement in the penitentiary, shall be confined in the penitentiary not less than double the time of the first conviction; and if convicted a third time of felony, he shall be confined in the penitentiary during his lifetime. Judgment in such cases shall not be given for the increased penalty, unless the court shall find, from the record and other competent evidence, the fact of former convictions for felony committed by the prisoner, in or out of this state." (Laws 1927, ch. 191.)

The validity of this statute has already been decided (*State v. Woodman,* 127 Kan. 166, 272 Pac. 132), but the question for our present consideration concerns its proper interpretation. Defendant calls attention to the punishment imposed by the crimes act for stealing a cow—one to seven years in the penitentiary (R. S. 21-534), and suggests the habitual-criminal act means that upon a second conviction of a felony the punishment should be governed by the nature and extent of the punishment imposed for the crime for which he was first convicted, thus:

Punishment for the first felony—stealing a cow—one to seven years' imprisonment.

*Ergo,* punishment for the second felony—stealing an automobile— not less than twice that first sentence, or two to fourteen years' imprisonment.

There is manifestly something wrong with that reasoning. A first offender convicted of stealing an automobile is to be given a sentence of five to fifteen years. How, then, could the persistent and unreformed felon who stole this automobile be given a sentence of "not less than two years nor more than fourteen years" without rendering the statute ridiculous? The avowed purpose of the habitual-criminal act is to provide additional punishment for criminals who are convicted of a felony for a second and third time. To gauge the proper punishment by doubling the length of sentence imposed for some prior offense would frequently lead to absurd conclusions, just as it would do in this case if defendant's interpretation of the statute were adopted. To illustrate this point a little further: Suppose a first-time offender is convicted of murder in the second degree and given a sentence of twenty years' imprisonment. Eventually he will be released, and suppose that in a moment of weakness he afterwards commits the relatively minor felony of betting in a common gaming house, selling lottery tickets, or the like, either of which would ordinarily carry a sentence of a year's imprisonment. Should such second offense carry a sentence of forty years' imprisonment because the poor wretch had once served twenty years for homicide? We do not now question the power of the legislature to enact a statute to that effect, but the court is under a solemn responsibility to avoid giving a fantastical interpretation to a deliberate legislative enactment.

In *City of Independence v. Turner,* 114 Kan. 731, 733, 220 Pac. 195, it was said:

"Where the purpose of the legislature is plain, the misuse or omission of a word or phrase will not defeat the evident purpose and courts are warranted in supplying words which are consistent with the context of the act and the manifest intention of the legislature."

In *Pfleiderer v. Brooks,* 122 Kan. 647, 650, 253 Pac. 549, where a question of statutory construction was under consideration, Mr. Chief Justice Johnston, speaking for the court, said:

"It has been said that 'a cardinal canon of construction, to which all mere rules of interpretation are subordinate, is that the intent, when ascertained, governs.' (*State v. Bancroft,* 22 Kan. 170.) If a term is inappropriate or open to more than one meaning, we should look to the context and give

effect to the manifest intention of the legislature. 'This (it has been said) is only making the naked letter yield to its obvious intention.' "

See, also, *State v. Knoll,* 69 Kan. 767, 77 Pac. 580; *Coney v. City of Topeka,* 96 Kan. 46, 49, 153 Pac. 506; *State, ex rel., v. City of Hutchinson,* 106 Kan. 532, 188 Pac. 433; *Van Doren v. Etchen,* 112 Kan. 380, 211 Pac. 144; *Ball v. Oil & Gas Co.,* 113 Kan. 763, 216 Pac. 422.

In the present instance the legislative intention is plain and obvious notwithstanding a certain want of precision in the text of the statute. When a person is convicted of a felony, ordinarily the court would turn to the crimes act and impose on him the term of imprisonment therein prescribed. But if, after his conviction of a felony, it is shown to the court that the person thus convicted had once before been convicted of a felony, the term of imprisonment to be prescribed for the offense must at least be doubled. In imposing sentence the trial court need have no concern with the character of the former felony nor with the duration of the former sentence. Its only concern will be with the fact that the person to be sentenced had once before been convicted of a felony. In this case the correct practice was followed. Having been found guilty of stealing the automobile, the punishment would have been five to fifteen years' imprisonment but for the fact that he was shown to be an old offender, consequently he was properly ordered to be confined in the penitentiary for not less than double the time of penal servitude which he would have had to undergo for stealing an automobile if this were his first conviction of a felony.

The judgment is affirmed.

JOCHEMS, J. (concurring specially): It has required considerable study on my part to agree to the view taken by the majority of the court as to the construction of chapter 191 of the Laws of 1927. At the consultation I disagreed, and when the opinion was submitted my inclination was to dissent.

The wording of the statute—"not less than double the time of the first conviction"—presents an ambiguity readily apparent. Does it mean the "time" of the sentence imposed for the crime of which the felon was first convicted, or does it mean the "time" of the sentence imposed for a first conviction of the felony of which he is convicted on his second trial? As it first appeared to me, it meant not less than

double the time of the sentence given for the crime of which he was first convicted. Following this construction we have this situation: The appellant in this case on his first conviction had received a sentence of one to seven years. The penalty for the crime of which he is now convicted should, therefore, be "not less than double the time of the first conviction," that is, not less than two to fourteen years. Since the penalty for stealing an automobile is from five to fifteen years, and that is more than two to fourteen years, I reasoned that the requirements of the act are complied with by imposing the regular sentence of five to fifteen years, and that the sentence in the case at bar should have been five to fifteen years. This appeared at first to be the proper construction and provided the safeguard that upon a second conviction the felon could not escape with less than double the time of his first conviction.

This construction, however, defeats the purpose which the legislature sought to accomplish, namely, additional punishment for the second offense. It would permit the person convicted of a second felony to escape with the same punishment as if stealing the automobile were his first crime.

The title of the act reads:

"An act relating to punishment for felony, providing additional punishment for second and third convictions."

By referring to the title it is readily seen, therefore, that the legislature intended to provide an "additional" punishment for a second conviction. In 36 Cyc. 1133 the text reads:

"While expressions are often found, especially in the earlier English cases, to the effect that the title is no part of a statute, yet, the rule is now well established, both in England, in the United States, and in the English colonies, that where the meaning of the body of the act is doubtful, reference may be had to the title to remove the ambiguity or to supply an omission."

In *United States v. Fisher et al.,* 2 Cranch 358, 2 L. Ed. 304, Chief Justice Marshall well said:

"When the mind labors to discover the design of the legislature, it seizes every thing from which aid can be derived; and in such case the title claims a degree of notice, and will have its due share of consideration."

This court has likewise held that the title and body of the entire act will be examined to determine the legislative intent. (*Baker v. Land Company,* 62 Kan. 79, 61 Pac. 412; *Watson v. Iron Works,* 70 Kan. 43, 74 Pac. 269; *State, ex rel., v. City of Lawrence,* 98 Kan. 808, 160 Pac. 217.)

The act under consideration (Laws of 1927, ch. 191) is what is commonly referred to as the "Baumes" law. The state legislature of New York, upon the recommendation of the New York state crime commission, after an exhaustive study of the crime situation, in 1926 adopted certain laws which have since been designated the "Baumes" laws due to the fact that the chairman of the commission was Senator Caleb H. Baumes. Chapter 457 of the Laws of New York, 1926, provides *inter alia*:

"SECTION 1. . . . A person, who, after having been convicted within this state, of a felony, or an attempt to commit a felony, or, under the laws of any other state, government or country, of a crime which, if committed within this state, would be a felony, commits any felony, within this state, is punishable upon conviction of such second offense as follows: If the subsequent felony is such that, upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life, then such person must be sentenced to imprisonment for a term not less than the longest term, nor more than twice the longest term, prescribed upon a first conviction."

An examination of that act shows clearly that the additional term of punishment relates to that prescribed for the commission of the second felony. The "first conviction" referred to in the clause "for a term not less than the longest term, nor more than twice the longest term prescribed upon a first conviction" relates back to the term "subsequent felony" used at the beginning of this paragraph. It has nothing to do with the first felony for which conviction was had.

Our legislature evidently had the above act before it. While it saw fit to change the language and to enact a more severe law by providing life imprisonment for a third conviction of felony, instead of a fourth conviction, as the New York law does, yet it had in mind the same purpose and object as the New York legislature, namely, to provide additional penalties for the commission of felonies subsequent to the first one, and thereby strive to deter the criminally inclined from repeated felonies.

Taking the foregoing into consideration, as well as the reasons set forth in the majority opinion, I am impelled to the conviction that the legislature intended to provide an additional punishment for the commission of a second felony, and that the expression "not less than double the time of the first conviction" was meant and intended to provide a double penalty—that is, double the sentence which would be imposed if the prisoner stood before the court for

sentence for the first time prior to the adoption of the act in question. In the case at bar the sentence provided by the crimes act is from five to fifteen years. The defendant, having been previously convicted of a felony, is not entitled to be treated as a first offender, but because of the enactment of chapter 191 of the Laws of 1927 comes before the court as a habitual offender—a repeater. He is penalized for his second lapse by being assessed double the punishment he would have received if stealing the automobile had been his first offense. The judgment is correct.

JOHNSTON, C. J., dissenting.