No. 37,043

PETE RAUSCH, *Appellant*, v. WILLIAM S. HILL, County Engineer, *Appellee.*

(190 P. 2d 357)

Opinion filed March 6, 1948.

*William Gough, Jr.,* of Chanute, argued the cause, and *Ruth Bordner Gough,* of Chanute, was with him on the briefs for the appellant.

*George S. Lindsay,* of Fredonia, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal by the plaintiff from an adverse judgment in a replevin action brought to recover a road grader from a county engineer.

The principal question presented is whether plaintiff acquired title to the grader by bill of sale executed and delivered to him by the township after the county had adopted the county road unit system.

The action was tried on stipulated facts which, in substance, were:

Plaintiff is a resident of Neosho county; defendant is the county engineer of Wilson county; the township had acquired a used grader in 1942; on September 24, 1945, the board of county commissioners of Wilson county passed a resolution to adopt the county road unit system; thereafter a protest was filed to such action by petitioners signed by more than twenty percent of the qualified electors of the county; an election was had on August 6, 1946, to determine whether such a system should be adopted; the election resulted in adopting such system; on October 28, 1946, the county sent a letter to all township treasurers as follows:

"Complying with a ruling of the Attorney General of Kansas, we are mailing this letter to all township Treasurers.

"Please make out a report of road *and* receipts and expenditures for the period beginning Jan. 1 and ending Oct. 31 inclusive.

"Please mail warrant in the amount of your road fund balance to the County Treasurer.

"Please mail to the County Engineer, invoice of all the equipment you have on hand.

"All future construction and maintenance & road repairs will be handled and paid through the office of County Engineer.

"Do not sell any equipment.
                    "BY
                        "H. L. ORENDORFF
                        "Chairman of the
                        "Board of County Commissioners
"PS   Have Trustee make his report also."

Guilford township, here involved, refused to comply with the letter; on October 29, 1946, that township executed and delivered a bill of sale for the grader to Pete Rausch, the plaintiff; on October

29, 1946, he executed his check for the grader in the sum of $200.00; the township endorsed the check and placed it on deposit; it received credit to its account in that amount; on December 18, 1946, the grader was located by defendant and he took it into his possession; December 23, 1946, plaintiff demanded its return, which defendant refused.

The contentions of the parties revolve primarily around the following provisions contained in G. S. 1935, 68-516, to wit:

"Boards of county commissioners may adopt the provisions of the county road unit system by resolution at a regular meeting of said board, and in the event of the filing with the county clerk a petition signed by 20 percent of the qualified electors in the county, the board of county commissioners shall adopt the provisions of the county road unit system by resolution at the next regular meeting of said board: *Provided,* That in either event said resolution shall be published in a newspaper of general circulation in the county for at least three consecutive weeks: *Provided further,* That such adoption shall take effect ninety (90) days after date of the first publication of the resolution providing for such adoption unless within such time there is filed with the county clerk a petition signed by 20 percent of the qualified electors in the county protesting such adoption, in which event the board of county commissioners is hereby required to submit the question of a county road unit system to the electors of the respective counties."

and G. S. 1935, 68-516a, which reads:

"That the township board of any township in any county which has adopted and is operating under the county road unit system is hereby authorized and empowered to pay over to the board of county commissioners of such county or counties *any and all unused road money or funds or any surplus funds in the hands of such township board, to be used by the board of county commissioners for road work* in the township thus paying over *such money. Such money* to be used only for road work and improvement within the township thus paying over *such money* to the county board." (Our italics.)

The parties disagree relative to the date the county road unit system becomes operative where the county adopts that system by virtue of an election. The effective date becomes material in this case only if the legislature intended the county should acquire title to the grader. The latter question will, therefore, receive our first attention.

Appellant contends the statute does not require the township to transfer road machinery and equipment; it provides only for the transfer of ". . . . any and all unused road money or funds or any surplus funds in the hands of such township board."

Appellee counters with the contention the word "funds" may in

certain instances be construed to include property of every kind and to embrace assets. We need not labor that point. This court has recognized the fact that the word "funds" may at times be so construed. (*State v. Finney,* 141 Kan. 12, 31, 40 P. 2d 411.)

Words should always be interpreted in harmony with the legislative intent if that intent can reasonably be ascertained. This may be done by all legitimate methods. (*Clifford v. Eacrett,* 163 Kan. 471, 475, 183 P. 2d 861.) The function of courts is to ascertain the legislative intent in order that the legislative will may be made effective. (*State, ex rel., v. State Highway Comm.,* 163 Kan. 187, 182 P. 2d 127.) The presumption is in favor of the natural and popular meaning in which the words employed are usually understood. (*Hunt v. Eddy,* 150 Kan. 1, 11, 90 P. 2d 747.) The intent of the legislature must be ascertained by a consideration of all material portions of a statute or act and not from isolated portions thereof. So in *Pfleiderer v. Brooks,* 122 Kan. 647, 253 Pac. 549, it was said:

"The general rule is that words in common use are to be given their natural and ordinary meaning, but it is also the rule that they are to be examined and interpreted in connection with the subject matter to which they relate. It has been said that 'a cardinal canon of construction to which all mere rules of interpretation are subordinate, is that the intent when ascertained, governs.' (*State v. Bancroft,* 22 Kan. 170.) If a term is inappropriate or open to more than one meaning, we should look to the context and give effect to the manifest intention of the legislature. 'This (it has been said) is only making the naked letter yield to its obvious intent.'" (p. 650.)

To the same effect is *State v. Close,* 130 Kan. 497, 498, 287 Pac. 599.

The real question here is whether the legislature intended the word "funds" should include road equipment and machinery. Before resorting to other means of construction we shall first examine G. S. 1935, 68-516a in order to ascertain whether it casts any further light on the question presented. It will be observed that statute, after stating what shall be transferred to the county, designates that subject matter as "such money." This designation, namely, "such money," is employed three times in the same section as descriptive of the subject matter to be transferred to the county.

Does any language in G. S. 1935, 68-516 constitute an aid to construction? We think the following portion thereof, in addition to that part previously quoted, must be considered. It reads:

"When any county has adopted the provision of the county road unit system the board of county commissioners is hereby authorized to increase the levy for road purposes to not more than 3 mills and the levy for bridge purposes to not more than 3¼ mills and shall receive from the township officials all road and bridge funds, special motor vehicle tax funds and poll tax funds which have been received or may be collected and in the hands of the township treasurer or placed to his credit: *Provided,* That all such funds from levies made before such adoption, received from any township treasurer when the county road unit system becomes effective must be expended for the purpose for which they were levied and in the township in which they were collected."

From this provision it is clear three separate and distinct *funds* were involved, namely, the road and bridge *funds,* the special motor vehicle tax *funds* and the poll tax *funds.* It would seem logical to assume these were the various "funds" to which the lawmakers referred in the next section, namely, G. S. 1935, 68-516a, and in that section, as previously indicated, all funds were designated as "such money."

In further aid of the construction that township road machinery and equipment were not intended to be transferred to the county appellant directs attention to the following: G. S. 1935, 68-517 contemplates and provides the county road unit system may be abandoned after two years from the date of its adoption; appellant argues the lawmakers were cognizant of this provision and realized if such system was abandoned the townships would again need such road machinery and equipment; in 1941 when dealing with counties *not operating under the county road unit system* and with respect to townships which nevertheless desired to turn over to the county the maintenance, repair and construction of township roads, the legislature did expressly provide for the transfer of *road machinery and equipment* in addition to "all unused road money or funds or surplus funds and all other moneys received by such township" (G. S. 1947 Supp. 68-561); appellant reasons this distinction is significant and discloses the legislative intent to require the transfer of road machinery and equipment only under the circumstances described in that statute; upon the creation of the state highway system in 1929 the legislature provided for the transfer of all machinery, equipment and road materials of the counties to the state highway commission; appellant argues if a similar transfer had been intended under circumstances in the instant case the legisla-

ture would have made the same clear provision contained in the state highway act.

G. S. 1935, 68-141a provides:

"That the boards of county commissioners and township trustees in the various counties of the state are hereby authorized to rent or hire county and township machinery and equipment to residents of the county or township. The board of county commissioners in any county in the state are hereby authorized to rent or hire county machinery or equipment to any township or city located in the county. The township trustees in any township of the state are hereby authorized to rent or hire township machinery or equipment to the county or any city in the county where such township is located."

Appellant reasons this statute also discloses the legislative intent to permit townships to retain their road machinery and equipment in order that they may rent it, not only to the county, but to cities and residents of the township for whatever purpose they desire.

Appellee, in substance, asserts: That in order for appellant to prevail in a replevin action he must show he owns the property or has a special ownership or interest therein, that he is entitled to the immediate possession thereof and that the property is wrongfully detained by the defendant (citing *Johnson v. Beach,* 146 Kan. 781, 782, 73 P. 2d 1040); that in the absence of an express provision in the act the county road unit system became effective on the date of the election which was long prior to the date of the bill of sale; the township had no further use for the grader as the county had taken over the maintenance, repair and construction of township roads; appellant was charged with knowledge of the fact an election had been held and was not a bona fide purchaser for value.

The primary question, as previously stated, is one of legislative intent. The fact the purchaser knew, or reasonably should have known, the election resulted in the adoption of the new system did not preclude his acquisition of title to the grader unless the law deprived the township of title thereto.

In view of the importance of road machinery and equipment in connection with the subject of road building, repair and maintenance and in view of the many legislators who are thoroughly conversant with the local aspects of that subject we find it difficult to believe the failure to provide, in this particular statute, for the transfer of road machinery and equipment constituted an oversight. It would rather appear these practical lawmakers, of whom there are many

in every legislative session, probably realized the large task a county would be undertaking under the new system. They knew if it was not a success it could be abandoned in two years. They may have concluded the success of such a program required that counties should not be burdened with worn, obsolete and inadequate township machinery and equipment which some of the townships may well have had. The lawmakers also may have concluded they would leave such machinery and equipment with the townships where it would be readily available to the county for such limited use as it might be able to make of it. Such considerations, or motives, if they existed, were, of course, matters of legislative policy with the wisdom of which courts have no concern. (*State v. Momb,* 154 Kan. 435, 441, 119 P. 2d 544; *State, ex rel., v. State Highway Comm.,* supra, p. 200.)

Had the legislature desired to transfer ownership of such property to the counties it easily could have inserted appropriate language to effectuate that result as it expressly did in some of the other statutes.

In view of the statutes directly involved and other pertinent ones we think it cannot be said the county acquired title to the grader. The judgment must, therefore, be reversed with directions to enter judgment for the appellant. It is so ordered.

HARVEY, C. J., not participating.