No. 28,376.

THE STATE OF KANSAS, *Appellee*, v. A. F. WOODMAN, *Appellant*.

(272 Pac. 132.)

Opinion filed December 8, 1928.

*Ira C. Snyder* and *C. I. Moyer, Jr.,* both of Manhattan, for the appellant.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, and *Walter Reed Gage,* county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The defendant, A. F. Woodman, was convicted of feloniously wounding one Robert Reynolds by shooting him in the back as he sped away in an automobile from defendant's filling station on the night of October 9, 1927.

The state's theory was that the crime was wantonly perpetrated. Woodman's defense was that he had been annoyed by prowlers; that Reynolds and two other young men and the wife of one of them came to his filling station at midnight and stole some of his property—tires, jack and water can—and were taking these articles away in their automobile; that he called on them to halt, first firing his revolving pistol in the air and then aimed at their rear tires; that his purpose in shooting was only to stop the car and cause the arrest of the persons in it; and that he had no intention to do bodily harm to either of them.

Jury trial, conviction, and double the usual sentence under authority of chapter 191 of the Laws of 1927.

Defendant appeals, first assigning prejudicial error on the familiar manner in which the county attorney addressed the prosecuting witness who had been carried into court on a stretcher, thus:

[COUNTY ATTORNEY]: "Q. Am I talking too fast for you, Bob, old man? A. No. . . .

"Q. After you got shot, Bob, how long was it before you can remember? A. Sunday night. . . .

"Q. Have you.been in the hospital ever since, Bob? A. Yes.

"Q. What were you trying to steal out there, Bob? A. Nothing. . . .

"Q. Now, Old Man, can you give this jury and the court any reason at all, Bob, why Mr. Woodman should have shot you or at you, or any members of your party that night? . . .

[Objection sustained.] . . .
[COUNTY ATTORNEY]: "That's all, Bob."

Counsel for appellant also assures us that this undue familiarity of addressing the witness by the county attorney was aggravated by "certain motions and acts, such as stroking the witness Robert Reynolds upon the head, forehead and arm as he propounded the questions to the witness, and that this was all done for effect and for the purpose of appealing to the jury and prejudicing them against the appellant."

A diligent examination of the record fails to reveal any objection made in the trial court concerning these familiarities of the county attorney. Time and again this court has declared that it is useless to assign errors on matters which were suffered to transpire without complaint in the trial court, and that a reversal of judgment will not be decreed on errors which the trial court itself was not asked to correct. (*Brown v. Oil Co.,* 114 Kan. 482, 218 Pac. 998; *State v. Bell,* 121 Kan. 866, 250 Pac. 281.)

The same rule of appellate review bars consideration of the alleged motions and actions of the county attorney directed toward the prosecuting witness. The record cannot be supplemented by statements of fact volunteered by counsel for a litigant. The alleged misconduct of the county attorney should have been challenged peremptorily when it occurred, and a record should have been made of the matter then and there; and in any event the facts should have been put in record form by affidavits and urged on the trial court's attention in support of defendant's motion for a new trial. The want of these timely requisites prevents a review of this assignment of error.

The next error urged relates to an instruction of the trial court touching defendant's right to recover his property and to arrest the parties in the automobile as it sped away from defendant's filling station if the jury should find that Reynolds and his associates, or either of them, had actually stolen defendant's property. The instruction told the jury that defendant had the lawful right to retake his property if so stolen, and to arrest Reynolds and his associates without a warrant, and—

"You are further instructed in this connection that where a felony has been recently committed by any person or persons, and a private citizen has reasonable cause to suspect that such person or persons are guilty of its commission, the law authorizes the private citizen, while acting in good faith, to arrest the

person or persons who have committed the felony in order to prevent their escape; and in so doing he may use such means as appear necessary under the circumstances to effect the arrest, and in such case if the person or persons whose arrest is attempted have reasonable grounds for believing that it is the actual intention of the one attempting the arrest and knows his motive for so doing, he would not be justified under the law in resisting arrest. But in making such arrest or in attempting to do so, he must do so in a temperate and proper manner, without the use of deadly weapons in such a way as to endanger the life of or do great bodily injury to the person or persons sought to be arrested."

Defendant criticizes the concluding sentence of this instruction, stressing his own version of the facts—that "defendant saw his property being carried away in a car," and that in firing the revolver shots at the rear tires of the automobile he was not using more force than necessary to recapture his property and prevent the escape of the thieves. One trouble with this argument is that the jury did not believe defendant's property had been stolen by the persons in the automobile, but apparently did believe that defendant shot in the direction of the moving automobile without excuse and in wanton disregard for the safety of its passengers. The instruction was quite favorable to defendant. In *Garnier v. Squires*, 62 Kan. 321, 325, 62 Pac. 1005, it was said:

"A private person arrests without a warrant at his peril and it will be a false imprisonment unless it can be shown that a felony has actually been committed. (*Wakely v. Hart*, 6 Binn. [Penn.] 318; *Beckwith v. Philby*, 6 Barn. & Cres. 635; *Holley v. Mix*, 3 Wend. [N. Y.] 351; *Allen v. Wright*, 8 Car & P. 522; *Burns v. Erben*, 40 N. Y. 463; *Hawley v. Butler*, 54 Barb. [N. Y.] 490; 12 A. & E. Encycl. of L., 2d ed., 740.)"

See, also, *State v. Mowry*, 37 Kan. 369, 15 Pac. 252; *State v. Vandruff*, 125 Kan. 496, 502, 264 Pac. 1030; Crim. Proc. T. No. 1, A. L. I. sections 19 (2) and 22, and pp. 145, 146, 155-159.

Defendant's third assignment of error is that the verdict was contrary to the evidence. That part of the evidence which the jury chose to believe tended to show that, altogether without cause or excuse, defendant willfully placed five revolver bullets in the back of the moving automobile and that two of these penetrated the back and hip of the prosecuting witness, causing wounds and injuries from which he will never recover. A doctor called as a witness testified that the injured man would probably never walk, and probably would not live a year. Under such circumstances defendant would certainly have been guilty of manslaughter, mayhap mur-

der, if death had ensued (R. S. 21-435), and the error assigned on the insufficiency of the evidence cannot be sustained.

Two other errors relate to the imposition of a penitentiary sentence of double the usual length of time prescribed by law for such punishment.

After defendant's motion for a new trial had been presented and overruled, the county attorney produced record evidence that defendant had theretofore been convicted of the felony of persistent violation of the prohibitory law. The trial court made a finding of fact to that effect, and at the allocution defendant offered no valid excuse why sentence under the act of 1927 should not be imposed.

The pertinent paragraphs of the crimes act read:

"21-107. If any person convicted of any offense punishable by confinement and hard labor, or of any attempt to commit an offense which if perpetrated would be punishable by confinement and hard labor, shall be discharged either upon pardon or upon compliance with the sentence, and shall subsequently be convicted of any offense committed after such pardon or discharge, he shall be punished as follows:

"First. . . .

"Second. If such subsequent offense be such that upon a first conviction the offender would be punishable by imprisonment for a limited term of years, then such person shall be punished by confinement and hard labor for the longest term prescribed upon a conviction for such first offense." (G. S. 1868, ch. 31, § 289.)

"21-435. If any person shall be maimed, wounded or disfigured, or receive great bodily harm, or his life be endangered by the act, procurement or culpable negligence of another, in cases and under circumstances which would constitute murder or manslaughter if death had ensued, the person by whose act, procurement or negligence such injury or danger of life shall be occasioned shall, in cases not otherwise provided for, be punished by confinement and hard labor not exceeding five years, or in a county jail not less than six months." (G. S. 1868, ch. 31, § 42.)

The indeterminate sentence act of 1903 provides:

"62-1521. Every person convicted of a felony or other crime punishable by imprisonment in the penitentiary, except murder and treason, if judgment be not suspended or a new trial granted, shall be sentenced to the penitentiary, except in the cases provided for in Laws of 1901, chapter 355, section 8; but the court imposing such sentence shall not fix the limit or duration of the sentence, but the term of imprisonment of any person so convicted shall not exceed the maximum nor be less than the minimum term provided by law for the crime for which the person was convicted and sentenced, the release of such person to be determined as hereinafter provided."

Supplementing the foregoing is the new statute, Laws 1927, chapter 191, which provides:

"SEC. 1. Every person convicted a second time of felony, the punishment of which is confinement in the penitentiary, shall be confined in the penitentiary not less than double the time of the first conviction; and if convicted a third time of felony, he shall be confined in the penitentiary during his life. Judgment in such cases shall not be given for the increased penalty, unless the court shall find, from the record and other competent evidence, the fact of former convictions for felony committed by the prisoner, in or out of this state."

The latter statute was in effect when this offense was committed and was applicable thereto unless the points urged against it are valid. Noting these in order, the invalidity of the act of 1927 is first argued on the ground that it did not repeal the earlier statute, R. S. 21-107, which is part of the original crimes act of 1868. That statute has been modified quite materially, if not largely superseded, by the indeterminate sentence act of 1903 which so greatly changed the mode of sentencing felons and changed the duration of their terms of penal servitude. Any irreconcilable conflict between these statutes would have to be resolved in favor of the more recent enactment, although they were both incorporated in the general revision of 1923. (*Arkansas City v. Turner, State Auditor,* 116 Kan. 407, 226 Pac. 1009; *City of Wichita v. Wichita Gas Co.,* 126 Kan. 764, 271 Pac. 270.) By the same reasoning the act of 1927 is paramount. However desirable it may be for the legislative draughtsman to include a repealing section in any new statute he is formulating, it is not absolutely necessary to do so. If the new legislation will not accord with all the older body of statutes, so much of the old as is in conflict with the new must impliedly yield to the latter as the last expression of the legislative will. (*Case v. Bartholow,* 21 Kan. 300; *Missouri Pac. Rld. Co. v. Red Star Milling Co.,* 122 Kan. 122, 126, 251 Pac. 417; 25 R. C. L. 914, 930; 36 Cyc. 1071, 1073, 1095.)

The invalidity of the statute of 1927 is also urged because it prescribes a different punishment for different persons committing the same offense. That objection is not good. Formerly the imposition of the sentence was left to the discretion of the trial judge within limitations, and it was common for old offenders and hardened criminals to receive severe sentences while first offenders convicted of the same crime were leniently dealt with. And it is a salutary provision of law that criminals whom the law's discipline has hitherto failed to reform by prior conviction and punishment should form a class to be more severely punished than first offenders. In 16 C. J. 1339, 1340, it is said:

"Statutes which authorize a more severe penalty to be inflicted upon one convicted of a second or subsequent offense are constitutional, and are not objectionable upon the ground that they are *ex post facto* laws, that they inflict a double punishment for the same offense, that they inflict cruel or unusual punishment, that they put accused twice in jeopardy for the same offense, that they deny defendant due process of law, that they deny defendant a fair and impartial trial, or that they impose a penalty on crimes committed outside the jurisdiction. Likewise such a statute is not violative of a constitutional provision requiring that all penalties shall be proportioned to the nature of the offense; nor is it objectionable on the ground that it prescribes different punishment for different persons committing the same offense."

See, also, *State v. Shiffler*, 93 Kan. 618, 144 Pac. 845; *State v. Briggs*, 94 Kan. 92, 145 Pac. 866; *State v. Norris*, 203 Ia. 327 and citations.

A final objection to the judgment is that the information on which defendant was prosecuted did not allege that defendant had formerly been convicted of a felony. There is a contrariety of judicial opinion as to the necessity for such allegation. (*People v. Gowasky*, 244 N. Y. 451; 31 C. J. 734-735.) Our statute of 1927 does not create a new offense. It merely prescribes a greater penalty for one who is convicted a second time of the commission of a felony and a still greater penalty for one who is convicted of a felony for the third time. To make his defense to a criminal charge all the accused needs to know is the nature of the crime charged against him and the names of the witnesses with whom he will be confronted in a prosecution therefor. In this state it is no concern of the jury what the penalty for a crime may be, and it is just as well that the jurors' minds should not be diverted from the question of defendant's innocence or guilt by facts concerning defendant's prior convictions of other felonies. It is also fairer to defendant to keep such matters entirely away from the jury. After conviction, however, and before the allocution the defendant should be timely apprised that a sentence under the act of 1927 will be demanded against him, so that he may show cause, if he can, why such higher penalty should not be imposed. (16 C. J. 1294, 1350.) In *People v. Gowasky*, supra, the New York court of appeals said:

"The action of the state of New York in adopting chapter 457 of the Laws of 1926, amending sections 1941, 1942 and 1943 of the penal law, commonly known as the 'Baumes act,' was nothing new. The practice was a century old. Either out of fairness to the prisoner or else for public safety, the method of charging a prisoner after conviction, not before, with having been previously

convicted of crime, and sentencing him accordingly, was well known to the law.

"This court, in *People v. Rosen* (208 N. Y. 169, decided 1913) again held, following the Sickles case (*supra*), that in order to convict a prisoner as a second offender and give him increased punishment, it was necessary to allege his previous convictions in the indictment and to prove them on the trial. Now we have changed all this and adopted the other practice. Previous convictions need not be alleged in the indictment, nor proved upon the trial of the new charge. This to me seems eminently fair to any prisoner. When he is charged and tried for a crime, his previous record may not be used to influence the jury to convict him of that crime. The proof against him is to be the same as if he were a first offender, unless possibly he takes the stand. But when he is convicted, then comes the question of his sentence, and he is no longer to be treated as a first offender. He may then for the first time be confronted with his record, and sentenced to a severer punishment, as he should be, if it turns out that he has previously transgressed the law. The old practice is still permissible; the indictment, as formerly, may plead the prior convictions, and proof of them may be given at the trial under such pleading, but it is no longer necessary. The indictment may charge only the new offense for which the prisoner is to be tried; on the trial the People will not and cannot offer as part of their case previous convictions. When, however, the trial is over, and the defendant stands convicted, then the previous record must be considered in determining the sentence. Prior convictions logically and in fact have little or nothing to do with proof of the defendant's guilt of a new crime; a man is not guilty of breaking the law merely because he has broken it before; but when the proof shows him to be guilty, then his past acts have much to do with the way he should be treated. The punishment for the second offense is increased because of his apparent persistence in the perpetration of crime and his indifference to the laws which keep society together; he needs to be restrained by severer penalties than if it were his first offense." (p. 459.)

Prejudicial error does not appear in this record, and the judgment is affirmed.