No. 32,773

Ed Levell, *Petitioner*, v. Lacy Simpson, Warden of the Kansas State Penitentiary, *Respondent*.

(52 P. 2d 372)

Opinion filed December 7, 1935.

*James M. Rader* and *Lillie Knight,* both of Kansas City, Mo., for the petitioner.

*Clarence V. Beck,* attorney general, and *J. S. Parker;* assistant attorney general, for the respondent.

The opinion of the court was delivered by

Dawson, J.: This is an application for a writ of habeas corpus. The petitioner is serving a life sentence in the state penitentiary for the crime of grand larceny. Through this proceeding he seeks his freedom on the ground that the sentence is void.

The facts are sufficiently developed by the application for the writ, by the response of the warden thereto, and by statements of counsel. There is no issue of fact requiring attention. It appears

that in January, 1929, an information was filed in the district court of Shawnee county charging this petitioner (and another) with the crime of grand larceny as defined in R. S. 21-533, the particulars of his offense being the theft in the nighttime of domestic poultry of the value of $25. The pertinent statute reads:

"Every person who shall be convicted of feloniously stealing . . . in the nighttime any domestic fowls . . . belonging to another, shall be deemed guilty of grand larceny."

In a trial before a jury a verdict of guilty was rendered against the petitioner, following which he was sentenced according to law; and what the law prescribed as his punishment and sentence requires consideration of the following provisions of the crimes act:

"Persons convicted of grand larceny shall be punished in the following cases as follows:

"*First* (for theft of automobiles, not pertinent).

"*Second* (for theft of specified 'domestic animals, not pertinent).

"*Third,* in all [other] cases of grand larceny, . . . by confinement at hard labor not exceeding five years." (R. S. 21-534.)

"Every person convicted a second time of felony, the punishment of which is confinement in the penitentiary, shall be confined in the penitentiary not less than double the time of the first conviction; and if convicted a third time of felony, he shall be confined in the penitentiary during his life. Judgment in such cases shall not be given for the increased penalty, unless the court shall find, from the record and other competent evidence, the fact of former convictions for felony committed by the prisoner, in or out of this state." (R. S. 1933 Supp. 21-107a, being Laws 1927, ch. 191.)

In the instant case the judgment roll, dated June 3, 1929, recites the rendition of the verdict and that sentence was deferred until June 8, 1929. A further postponement occurred, until June 22, 1929, at which time the court made a finding that the defendant had theretofore been convicted of two prior felonies, for one of which he had served a term in the Kansas state penitentiary, and for the other he had served a term in the Missouri state penitentiary. On that finding, together with the verdict in the pending case, petitioner was sentenced to life imprisonment in conformity with the statute.

The petitioner's contentions are that the sentence and judgment pronounced upon him and under which he is now confined in the penitentiary were in violation of his rights under the state and federal constitutions, in particulars which will be noticed in the order in which they are presented.

It is first asserted that he was denied the right to appear and

defend upon the question whether or not he was a habitual criminal. The record does not show any such denial of his right. The claim is wholly gratuitous as well as grossly out of time. Petitioner was represented by counsel, and if any such procedural right of defendant had been violated, timely objection should have been made thereto. It could not be corrected by the trial court nor reviewed or redressed by this court at this late date. Habeas corpus is not a substitute for a timely motion for a new trial, nor for a timely appeal, as a means for the correction of procedural irregularities. (R. S. 60-2213; *In re Bolman*, 131 Kan. 593, 595, 596, 292 Pac. 790; and note in 76 A. L. R. 468 *et seq.*)

Petitioner's next contention is that he was entitled to a jury trial on the question whether he had been convicted of other felonies on two prior and successive occasions. He had no such privilege under Kansas law, as this court has heretofore held. In *State v. Woodman*, 127 Kan. 166, 272 Pac. 132, where double the usual sentence was imposed for the crime of felonious assault, because, following the verdict and before sentence, it was shown that Woodman had been previously convicted of another felony, we said:

"A final objection to the judgment is that the information on which defendant was prosecuted did not allege that defendant had formerly been convicted of a felony. There is a contrariety of judicial opinion as to the necessity for such allegation. (*People v. Gowasky*, 244 N. Y. 451; 31 C. J. 734-735.) Our statute of 1927 does not create a new offense. It merely prescribes a greater penalty for one who is convicted a second time of the commission of a felony and a still greater penalty for one who is convicted of a felony for the third time. To make his defense to a criminal charge all the accused needs to know is the nature of the crime charged against him and the names of the witnesses with whom he will be confronted in a prosecution therefor. In this state it is no concern of the jury what the penalty for a crime may be, and it is just as well that the jurors' minds should not be diverted from the question of defendant's innocence or guilt by facts concerning defendant's prior convictions of other felonies. It is also fairer to defendant to keep such matters entirely away from the jury. After conviction, however, and before the allocution the defendant should be timely apprised that a sentence under the act of 1927 will be demanded against him, so that he may show cause, if he can, why such higher penalty should not be imposed. (16 C. J. 1294, 1350.)" (p. 172.)

See, also, *State v. Haines*, 128 Kan. 475, 479-480, syl. ¶ 6, 278 Pac. 767; *State v. Frizzell*, 137 Kan. 35, 37, 19 P. 2d 694.

Counsel for the petitioner ignore these cases completely, and press upon our attention various decisions from other jurisdictions. Those could only be helpful if the question were new and undecided

in this jurisdiction. Moreover, we find that with scarcely an exception those decisions were based upon statutes which expressly prescribe the procedural method for ascertaining the fact of the prisoner's prior conviction of one or more felonies. (See A. L. I. Code Criminal Procedure, Proposed Final Draft and commentaries, pp. 411-418.) In the Woodman case, *supra*, we took due notice of the fact that there was a contrariety of judicial opinion on the proper way to take into account the fact of a defendant's prior conviction of a felony when determining what sentence under the later conviction should be imposed. This court has no misgiving as to the fairness and justice of the Kansas practice—keeping all intimation of that fact away from the jury in the criminal trial as far as practicable, and making the matter of the sentence the subject of a later judicial inquiry before the trial court, with a fair opportunity for the prisoner to meet whatever record evidence and other evidence the state may adduce to establish the fact that he had formerly been convicted of another felony or of successive prior felonies. The circumspection which our procedure exerts to keep the fact of any former convictions for felonies away from the jury is to protect the accused from the possibility that in his pending trial the jury might conceive a prejudice against him as a habitual criminal. But where a second offense is a separate and distinct crime it must necessarily be so charged in the information, and the proof to support the charge in all its details would have to be submitted to the jury. We have one such crime in this state—the persistent violation of the prohibitory law. A first offense against the prohibitory law (with exceptions not here pertinent) is a misdemeanor punishable by a moderate fine and jail sentence. (R. S. 21-2101.) But a subsequent infraction of the prohibitory law is quite a different and a more serious crime. It is a distinct felony. (R. S. 21-2146.) In such a case, all the formalities of a felonious charge should be pleaded in the information. (Marshall's Kansas Intoxicating Liquor Law, § 282; *State v. Briggs,* 94 Kan. 92, syl. ¶ 3, 145 Pac. 866; *State v. Oliver,* 129 Kan. 719, 284 Pac. 357.) Of necessity, too, every material allegation in such an information would have to be proved to the satisfaction of a jury.

It is next urged that the trial court was without jurisdiction to sentence the prisoner as a habitual criminal, since in the information he was only charged as a first offender. He was not even charged "as a first offender." He was simply charged in conform-

ity with the statute—with the felonious theft of domestic poultry in the nighttime. And in this jurisdiction a criminal charge in the language of the statute is sufficient. (*State v. Buis,* 83 Kan. 273, 111 Pac. 189; *State v. Goodrich,* 136 Kan. 277, 15 P. 2d 434.) In this state, too, the punishment for crime is something with which the jury has no concern except under the recent statute providing for capital punishment in homicide cases. (Laws 1935, ch. 155.) The function of a jury is to determine the innocence or guilt of the accused. The law prescribes the penalty; and when the penalty of five years' penal servitude for the felonious theft of domestic poultry in the nighttime was prescribed by the statute of 1903 (R. S. 21-533) the legislature did not exhaust its power to deal with that sort of a crime. It was within its prerogative to provide, as it has done in this statute (Laws 1927, ch. 191, R. S. 1933 Supp., 21-107a), for a more severe penalty for the commission of a felony by a habitual criminal than by one who was merely a first-time offender. Such, at least, was the apparent theory of the lawmakers; and this matter of penalties for crime is their exclusive prerogative. In *State v. O'Keefe,* 125 Kan. 142, 263 Pac. 1052, which was an appeal from a judgment of conviction in a case of burglary and grand larceny, in the motion for a new trial affidavits of five jurors were introduced in which they averred that they would not have agreed to a verdict of guilty if they had known the punishment would have been a penitentiary sentence. This court said:

"The court did not tell the jury in . . . [its] instructions what the punishment would be in the event the defendant was found guilty. This was proper, for fixing the extent of the punishment is not a function of the jury. The function of the jury is to determine whether the defendant was guilty of the offense charged. The punishment is fixed by the court in accordance with the statute. (R. S. 21-523, 21-524.) For many offenses the court really has nothing to do with the extent of the punishment, the sentence being an indeterminate one under the statute. (R. S. 62-1521.) Hence, that was no reason for granting a new trial." (p. 145.)

The petitioner's next contention is that—

"Under the law of all the other states within the United States having laws affecting prior violators or habitual criminals, as well as in the United States courts, it is necessary to plead the prior violations in order to subject the accused to increased punishment therefor."

As this court is satisfied with the interpretation of Kansas law and Kansas procedure, it cannot attach as much significance to the law of other jurisdictions as do counsel for the petitioner. We are

not dismayed by the barrage of citations from other jurisdictions gleaned by the industry of counsel, seeing that counsel quite ignore our own—those, too, which really foreclose the legal questions which counsel for petitioner seek to raise.

It may be observed here that the code of criminal procedure promulgated by the American Law Institute rejects the notion that former conviction must be pleaded in the indictment or information, and that the issue thus tendered must be submitted to the jury. (A. L. I. Code Criminal Procedure, Official Draft, § 403.) So far as these subjects are concerned, this section was regarded as satisfying the requirements of due process of law under state and federal constitutions.

A final contention is that the Kansas statute is void because—

"Said act is ambiguous, of doubtful meaning and contradictory, and permits excessive sentences, and permits arbitrary and unreasonable discrimination in the enforcement of said act."

Whatever ambiguity did inhere in the act was clarified by judicial interpretation in *State v. Close,* 130 Kan. 497, 287 Pac. 599. If we should concede that the sentences imposed under the act are excessive, that feature would not render it unconstitutional. In Blackstone's time a thief was hanged for stealing a sheep. It is only where the trial or punishment violates some provision of the Kansas bill of rights, or the due process guaranties of the fourteenth amendment, that a penal statute can be stricken down by judicial pronouncement. No such infirmity inheres in the statute under consideration. No federal supreme court decision is cited which holds that a more severe punishment cannot be imposed on a *repeater* of felonies than on a first offender. On the contrary, in the notable case of *Graham v. West Virginia,* 224 U. S. 616, 56 L. Ed. 917, 32 S. Ct. 583, where a sentence of life imprisonment on a habitual criminal was under review, the supreme court, speaking by Mr. Justice Hughes (now Chief Justice), said:

"It cannot be said that the prisoner was deprived of due process of law because the question as to former conviction was passed upon separately. . . . If a state adopts the policy of imposing heavier punishment for repeated offending, there is manifest propriety in guarding against the escape from this penalty of those whose previous conviction was not suitably made known to the court at the time of their trial. . . . To repeat, the inquiry is not into the commission of an offense; as to this, indictment has already been found and the accused convicted. There remains simply the question as to the fact

of previous conviction. . . . The 14th amendment is not to be construed 'as introducing a factitious equality without regard to practical differences that are best met by corresponding differences of treatment.' [Citations.] A state may make different arrangements for trials under different circumstances of even the same class of offenses . . . and certainly it may suitably adapt to the exigency the method of determining whether a person found guilty of crime has previously been convicted of other offenses. All who were in like case with the plaintiff in error were subject to the same procedure. He belonged to a class of persons convicted and sentenced to the penitentiary whose identity as former convicts had not been determined at the time of their trial. As to these, it was competent for the state to provide appropriate means for determining such identity. . . . There is no basis for the contention that the plaintiff in error has been put in double jeopardy, or that any of his privileges or immunities as a citizen of the United States have been abridged. Nor can it be maintained that cruel and unusual punishment has been inflicted. [Citations.]" (pp. 625, 627, 630, 631.)

See, also, our own case of *In re Skinner,* 136 Kan. 879, 18 P. 2d 154.

In the oral argument counsel for the petitioner contended that, passing by the subject of charging former conviction in the information, and reaching the subject of sentence, the statute was bad as violating due process, in that no procedure was prescribed for ascertaining the fact of former conviction.

It is true that no detailed procedure is prescribed, and due process requires that defendant be fairly apprised of the subject of inquiry, and he be given opportunity to be heard. But in the Woodman case, *supra,* it was said that after conviction and before allocution, defendant should be timely apprised that a sentence under the act of 1927 will be demanded against him, so that he may show cause, if he can, why such higher penalty should not be imposed.

The statute provides that the increased penalty shall not be imposed unless the court shall find the fact of former conviction or convictions. The operative and judicial interpretation of this statutory provision is that a judicial finding is meant—which, of course, imports notice to defendant of subject of inquiry and opportunity to be heard, and that in this way the legislature provided for the essentials of due process in the concluding phase of the case.

The writ is denied and this proceeding is dismissed.