IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,767

STATE OF KANSAS
*Appellee,*

v.

ANITA JO ALBANO,
*Appellant.*

SYLLABUS BY THE COURT

1.

Section 5 of the Kansas Constitution Bill of Rights, which declares, "The right of trial by jury shall be inviolate," preserves the jury trial right as it historically existed at common law when our state's Constitution came into existence.

2.

In Kansas criminal proceedings, the traditional function of the jury is to determine the accused's guilt or innocence, and the traditional function of the court is to impose the legally appropriate punishment.

3.

When a prior conviction is an element of a statutory offense, the issue must be decided by a jury. But when prior convictions are considered in deciding punishment, the issue falls within the traditional function of the court to impose the sentence.

4.

Section 5 of the Kansas Constitution Bill of Rights does not guarantee defendants the right to have a jury determine the existence of sentence-enhancing prior convictions

1

under the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2020 Supp. 21-6801 et seq.; no authority substantiates that defendants had such a jury trial right at common law when our state Constitution was adopted.

Review of the judgment of the Court of Appeals in 58 Kan. App. 2d 117, 464 P.3d 332 (2020). Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed May 28, 2021. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Kasper Schirer*, of Kansas Appellate Defender Office, argued the cause, and *Heather Cessna*, of the same office, was with him on the briefs for appellant.

*David Lowden*, deputy county attorney, argued the cause, and *Kelly G. Cunningham*, assistant county attorney, *Barry R. Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

WALL, J.:  Anita Jo Albano was convicted of two drug offenses. In accordance with the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2020 Supp. 21-6801, et seq., District Court Judge John Bosch imposed her sentence based, in part, on judicial findings he made regarding her criminal history. Albano now contends the KSGA violates section 5 of the Kansas Constitution Bill of Rights because it allows the court to make criminal history findings for purposes of imposing a sentence, contrary to her right to trial by jury. We disagree.

Section 5 preserves the jury trial right as it historically existed at common law when our state's Constitution was adopted in 1859. Albano bases her constitutional challenge on the assertion that criminal defendants had a common-law right to have sentence-enhancing prior convictions proven to a jury at the time the Kansas Constitution was adopted. To the contrary, Kansas law has long recognized legally significant

2

distinctions between the function of the jury and the court—in particular, that the role of the jury is to determine the accused's guilt or innocence, and the role of the court is to determine punishment and issues relevant to it, including prior convictions. No authority substantiates Albano's contention that our state had adopted a common-law rule inconsistent with this traditional division of functions when the Kansas Constitution was adopted in 1859. Therefore, these traditional function-defining boundaries provide a proper measure of the scope of protection afforded under section 5. Because criminal history findings made for purposes of imposing a sentence falls within the exclusive purview of the court to determine punishment, the KSGA's method of determining a defendant's criminal history does not implicate section 5's right to trial by jury.

## FACTS AND PROCEDURAL BACKGROUND

A jury convicted Albano of two counts of distribution of a controlled substance within 1,000 feet of a school. One count was a severity level 2 drug felony and the other count was a severity level 3 drug felony. At sentencing, the district court found she had a criminal history score of F based on two prior nonperson felony convictions as reflected in her presentence investigation report. The court imposed a controlling term of 101 months' imprisonment, which was the mitigated term in the presumptive sentencing range based on her criminal history score and her conviction for a severity level 2 drug offense. Albano appealed.

For the first time on appeal, Albano raised her section 5 challenge to the KSGA. She also argued the district court made several instructional errors at her jury trial. The Court of Appeals rejected Albano's claims and affirmed her convictions and sentence. *State v. Albano*, 58 Kan. App. 2d 117, 464 P.3d 332 (2020). We granted Albano's petition for review to address her section 5 challenge to the KSGA.

3

*Jurisdiction*

We note that Albano received a presumptive sentence under the KSGA. Ordinarily, appellate courts do not have jurisdiction to review presumptive sentences. See K.S.A. 2020 Supp. 21-6820(c)(1). But we have recognized an exception for cases in which the defendant challenges the constitutionality of the overall statutory sentencing scheme rather than the defendant's individual sentence. See *State v. Huerta*, 291 Kan. 831, 840, 247 P.3d 1043 (2011); *State v. Johnson*, 286 Kan. 824, 842, 190 P.3d 207 (2008). Albano is challenging the KSGA itself, rather than her individual sentence. Therefore, her constitutional challenge is not subject to the jurisdictional bar set forth in K.S.A. 2020 Supp. 21-6820(c)(1). Jurisdiction is proper. See K.S.A. 20-3018(b) (petition for review of Court of Appeals decision); K.S.A. 60-2101(b) (providing Supreme Court jurisdiction over cases subject to review under K.S.A. 20-3018).

*Legal Framework and Standard of Review*

Albano brings her constitutional challenge to the KSGA under section 5 of the Kansas Constitution Bill of Rights, which provides: "The right of trial by jury shall be inviolate." We have long held that this provision "does not require every trial to be by jury. Nor does it contemplate that every issue, which, by the laws in force at the adoption of the constitution of the state, was triable by jury, should remain irrevocably triable by that tribunal." *Kimball and others v. Connor, Starks and others*, 3 Kan. 414, 432, 1866 WL 430 (1866). Instead, "'[s]ection 5 preserves the jury trial right as it historically existed at common law when our state's constitution came into existence.'" *State v. Love*, 305 Kan. 716, 734, 387 P.3d 820 (2017). The Kansas Constitution was adopted by constitutional convention in July 1859, ratified by the electors of the State of Kansas on October 4, 1859, and became law upon the admission of Kansas into statehood in 1861.

See *U.S.D. No. 229 v. State*, 256 Kan. 232, 239, 885 P.2d 1170 (1994). Whether the KSGA violates section 5 is a question of law subject to unlimited review. *State v. Gaona*, 293 Kan. 930, 957, 270 P.3d 1165 (2012).

*Summary of the KSGA Framework and Section 5 Challenge*

The KSGA is a graduated sentencing scheme that provides increasingly severe presumptive sentences for most convicted felons based on the severity of the crime committed and the defendant's criminal history. A sentencing court determines the presumptive sentence for a given defendant by referencing one of two sentencing grids. K.S.A. 2020 Supp. 21-6804(a) (sentencing grid for nondrug crimes); K.S.A. 2020 Supp. 21-6805(a) (sentencing grid for drug crimes). On both grids, the vertical axis reflects the statutorily assigned severity level of the crime committed, and the horizontal axis reflects the defendant's criminal history score. The presumptive term of imprisonment for a given defendant is found in the grid box at the intersection of the severity level of the crime committed and the defendant's individual criminal history score. This term is expressed in a range of months representing the aggravated, standard, and mitigated terms. K.S.A. 2020 Supp. 21-6804(b), (d); K.S.A. 2020 Supp. 21-6805(b), (d). While the sentencing court has discretion to sentence the defendant anywhere within this presumptive sentencing range, the court must impose a sentence within that range unless it finds substantial and compelling reasons to impose a departure sentence. K.S.A. 2020 Supp. 21-6804(e)(1); K.S.A. 2020 Supp. 21-6815(a).

Under this sentencing scheme, defendants with a higher criminal history score face longer terms of imprisonment. For example, if a defendant is convicted of a severity level 2 drug offense but has no criminal history, he or she faces a presumptive sentence of 92 to 103 months' imprisonment. However, if a defendant is convicted of the same offense and has two prior convictions for nonperson felonies, like Albano, the presumptive

5

sentencing range increases to 101 to 113 months' imprisonment. See K.S.A. 2020 Supp. 21-6805(a).

For the purpose of sentencing under the KSGA, a defendant's criminal history score is calculated by considering and scoring the defendant's eligible prior convictions. See K.S.A. 2020 Supp. 21-6810. Either the offender must admit his or her criminal history in open court or the sentencing judge must determine the offender's criminal history by a preponderance of the evidence at the sentencing hearing. K.S.A. 2020 Supp. 21-6814(a).

This last provision is the basis of Albano's section 5 challenge. She argues the KSGA violates section 5 because it allows the sentencing court, rather than a jury, to find the existence of prior convictions to determine a defendant's criminal history. She asserts that when the Kansas Constitution came into existence in 1859, the common law required prior convictions that increased the permissive penalty for a crime to be proven to a jury beyond a reasonable doubt. Thus, Albano contends this common-law right was preserved under section 5 and the KSGA's reliance on the court to make criminal history findings for purposes of imposing a defendant's sentence violates this right.

The Court of Appeals rejected Albano's section 5 claim for two reasons. First, the panel found that our court had rejected a similar argument in analyzing the jury trial guarantee provided under the Sixth Amendment to the United States Constitution. The panel predicted we would interpret the rights guaranteed in section 5 to be coextensive with those provided under the Sixth Amendment. *Albano*, 58 Kan. App. 2d at 127-29. Second, the panel found that no authority established the existence of a common-law right to have sentence-enhancing prior convictions proven to a jury in Kansas at the time of statehood. 58 Kan. App. 2d at 129-34. Albano challenges both rationales. We examine each in turn.

*Albano's Section 5 Claim Should Be Examined Independent of the Sixth Amendment*

We first consider the Court of Appeals' conclusion that the rights provided under section 5 of the Kansas Constitution Bill of Rights are coextensive with those guaranteed by the Sixth Amendment to the United States Constitution. As the State points out, if section 5 is merely coextensive with the Sixth Amendment, established precedent interpreting the Sixth Amendment would foreclose Albano's challenge. In *Almendarez-Torres v. United States*, 523 U.S. 224, 247, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), the United States Supreme Court held the Sixth Amendment does not require a jury to find the fact of a prior conviction that increases the statutory maximum punishment for a crime. Later, in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the Court held that any fact that increases punishment beyond the statutory maximum must be proven to a jury beyond a reasonable doubt, but the Court declined to overrule *Almendarez-Torres*, instead carving out an exception for prior convictions. Likewise, we have held that the KSGA does not violate the Sixth and Fourteenth Amendments to the United States Constitution. See *State v. Ivory*, 273 Kan. 44, 44, 41 P.3d 781 (2002).

The Court of Appeals relied on a syllogism to conclude section 5 rights are coextensive with those provided under the Sixth Amendment. The panel observed that we have previously held that section 10 of the Kansas Constitution Bill of Rights, which provides specific protections for criminal defendants, encompasses the jury trial right of section 5. *Albano*, 58 Kan. App. 2d at 128 (citing *In re Clancy, Petitioner*, 112 Kan. 247, 249, 210 P. 487 [1922] [holding section 10 includes the section 5 jury trial right and adds the right to have a speedy public trial in the county where the offense was committed in criminal proceedings]). The panel also noted that we have analyzed section 10's jury trial right as coextensive with the Sixth Amendment's jury trial right. *Albano*, 58 Kan. App. 2d at 129 (citing *State v. Carr*, 300 Kan. 1, 56, 331 P.3d 544 [2014] [recognizing that this court has not previously analyzed section 10's language differently from the Sixth

7

Amendment], *rev'd and remanded on other grounds* 577 U.S. 108, 136 S. Ct. 633, 193 L. Ed. 2d 535 [2016]). Therefore, the panel concluded that "since section 10 encompasses section 5's jury trial right and section 10 provides the same protection as the Sixth Amendment, it is a reasonable inference that section 5's jury trial right is also interpreted the same as the Sixth Amendment to the United States Constitution." *Albano*, 58 Kan. App. 2d at 129.

Albano claims the Court of Appeals' analysis fails to account for the textual and structural differences between the state and federal constitutional provisions. As she points out, the Sixth Amendment does not contain section 5's "inviolate" language. Instead, it guarantees that criminal defendants "shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. Albano argues that by including the word "inviolate" in section 5, the framers offered protections greater than those guaranteed by the Sixth Amendment. She also contends that by including jury trial rights in both section 5 and section 10, the framers of the Kansas Constitution intended section 5 to provide protections distinct from those within section 10. Since section 10 loosely tracks the language of the Sixth Amendment, Albano reasons that section 5 must provide different protections than the Sixth Amendment. See Kan. Const. Bill of Rights, § 10 (providing that criminal defendants have a right to "a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed").

We agree with Albano only to the extent that section 5 may not provide the same protections or guarantees as the Sixth Amendment in all cases. When interpreting the meaning of our state Constitution, this court has frequently adopted the United States Supreme Court's interpretation of the corresponding federal constitutional provision, notwithstanding any textual, historical, or jurisprudential differences. *State v. Lawson*, 296 Kan. 1084, 1091, 297 P.3d 1164 (2013). But "allowing the federal courts to interpret the Kansas Constitution seems inconsistent with the notion of state sovereignty." 296

Kan. at 1091-92. Thus, we retain authority to interpret the Kansas Constitution independently of the manner in which federal courts interpret corresponding provisions of the United States Constitution, which may result in our state Constitution providing greater or different protections. 296 Kan. at 1090-91. And our court has exercised this sovereign power to interpret certain provisions of the Kansas Constitution in a manner different from parallel provisions of the United States Constitution. See, e.g., *Hodes & Nauser, MDs v. Schmidt*, 309 Kan. 610, 624, 440 P.3d 461 (2019) (independently interpreting section 1 of the Kansas Constitution Bill of Rights in manner different from the Fourteenth Amendment to the United States Constitution); *State v. McDaniel & Owens*, 228 Kan. 172, 184-85, 612 P.2d 1231 (1980) (independently interpreting section 9 of the Kansas Constitution Bill of Rights in manner different from the Eighth Amendment to the United States Constitution).

In interpreting provisions of the Kansas Constitution, we have long adhered to the following rule of construction:

> "'[T]he best and only safe rule for ascertaining the intention of the makers of any written law, is to abide by the language they have used; and this is especially true of written constitutions, for in preparing such instruments it is but reasonable to presume that every word has been carefully weighed, and that none are inserted, and none omitted without a design for so doing.'" *Wright v. Noell*, 16 Kan. 601, 607, 1876 WL 1081 (1876).

When the words themselves do not make the drafters' intent clear, courts look to the historical record, remembering "'the polestar . . . is the *intention* of the *makers* and *adopters*.'" *Hunt v. Eddy*, 150 Kan. 1, 5, 90 P.2d 747 (1939); see *State ex rel. Stephan v. Finney*, 254 Kan. 632, 655, 867 P.2d 1034 (1994).

Here, of course, the language of section 5 does not directly correspond to the language of the Sixth Amendment. And to construe the jury trial rights in section 5 to be duplicative of those in section 10 appears inconsistent with the presumption that the

framers of the Kansas Constitution carefully weighed every word and neither inserted nor omitted any "'without a design for so doing.'" *Wright*, 16 Kan. at 607. More importantly, in determining whether section 5 is implicated, we look to the common-law rights as they existed in our state at the time the Kansas Constitution was adopted. See *State v. Love*, 305 Kan. 716, 734, 387 P.3d 820 (2017). The state-centric focus of this analysis leaves room for variance or divergence between the rights guaranteed under section 5 and those provided by the Sixth Amendment.

While we have previously declined to find section 5 provides greater protection than the Sixth Amendment, see *State v. Conley*, 270 Kan. 18, 35, 11 P.3d 1147 (2000), we have more recently analyzed a defendant's section 5 and Sixth Amendment claims separately. See, e.g., *Love*, 305 Kan. at 730-37. This practice is consistent with other states that have similar state constitutional provisions that characterize the right to trial by jury as inviolate. See, e.g., *Newkirk v. Nothwehr*, 210 Ariz. 601, 604, 115 P.3d 1264 (2005); *People v. Wiley*, 9 Cal. 4th 580, 586-87, 889 P.2d 541 (1995); *State v. Smith*, 150 Wash. 2d 135, 149-56, 75 P.3d 934 (2003).

That said, in this case we cannot determine whether section 5 provides greater or different protections than the Sixth Amendment by looking solely to the language or structure of the Kansas Constitution. We have interpreted the word "inviolate" as used in section 5 to mean "not disturbed or limited." *In re Rolfs, Petitioner*, 30 Kan. 758, 762, 1 P. 523 (1883). So, while section 5's language makes clear that the jury trial right may not be infringed upon, it says little about the scope of that right. And while section 5 and section 10 may provide different protections, this again tells us little about the scope of those protections, at least as it pertains to the issue before the court. Ultimately, we can only answer this question by looking to the historical record to determine if the common law recognized the right to have sentence-enhancing prior convictions proven to a jury when our state Constitution was adopted. See *Albano*, 58 Kan. App. 2d at 129 (defendant's section 5 challenge can be "more definitively resolved by applying a section

10

5 analysis"). As such, it is appropriate to analyze this section 5 challenge separately from the Sixth Amendment. And established precedent foreclosing Albano's challenge under the Sixth Amendment does not categorically dispose of her challenge under section 5.

*The Historical Record Confirms Judicial Fact-finding of Prior Convictions for Sentencing Purposes Does Not Implicate Section 5*

While we have not definitively established a framework for analyzing section 5 claims, we have asked two basic questions when conducting such an analysis: (1) "In what types of cases is a party entitled to a jury trial as a matter of right?"; and (2) "[W]hen such a right exists, what does the right protect?" *Love*, 305 Kan. at 735. Criminal prosecutions undoubtedly implicate section 5's jury trial right. 305 Kan. at 736. Thus, the controlling question here is whether the scope of section 5 encompasses the right to have prior convictions proven to a jury for the purposes of determining the defendant's sentence.

> *Kansas' Traditional Division of Functions Between the Jury and the Court Confirms the KSGA Does Not Implicate Section 5*

In determining the scope of protection afforded under section 5, our court has frequently looked to the traditional functions performed by the jury. For example, in *Love*, this court addressed whether the Legislature's statutory elimination of the lesser included offenses of felony murder violated a defendant's section 5 jury trial right. There, defendant argued section 5 guaranteed a right to have the jury determine whether he was guilty of a lesser included offense, in lieu of the charged offense, because juries were instructed on lesser included offenses at common law. In analyzing this issue, *Love* determined that the scope of section 5's protection is limited to those functions traditionally performed by juries. The court recognized that in the guilt phase of criminal proceedings issues of fact historically fall within the province of the jury, but "[t]he right to have the jury determine issues of fact is in contrast to the determination of issues of

11

law, which has always been the province of the court." 305 Kan. at 735. Thus, *Love* determined that the section 5 jury trial right extends "'no further than to give the right of such trial *upon issues of fact so tried at common law*.'" 305 Kan. at 735 (quoting *Hasty v. Pierpont*, 146 Kan. 517, 519, 72 P.2d 69 [1937]). Because the decision to instruct a jury on lesser included offenses is generally a question of law for the court to decide, *Love* held that the Legislature's statutory elimination of the lesser included offenses of felony murder did not violate defendant's section 5 right to trial by jury. 305 Kan. at 736-37. In other words, the legislative action did not affect a traditional function performed by the jury.

Like the role-defining boundary between issues of fact and issues of law, Kansas courts have also long recognized a similar boundary between the guilt phase and the sentencing phase of criminal proceedings. In *State v. O'Keefe*, 125 Kan. 142, 145, 263 P. 1052 (1928), this court acknowledged that "fixing the extent of the punishment is not a function of the jury. The function of the jury is to determine whether the defendant was guilty of the offense charged. The punishment is fixed by the court in accordance with the statute." See also *Love*, 305 Kan. at 735-36 ("Issues of fact for the jury to determine include . . . guilt in criminal cases."); 1 Bishop, Bishop on Criminal Law, § 934 (9th ed. 1923) ("Under the common law procedure, the court determines in each case what within the limits of the law shall be the punishment—the question being one of discretion.").

In *State v. Hathaway*, 143 Kan. 605, 56 P.2d 89 (1936), our court reversed defendant's conviction after the district court, in response to a jury question, instructed jurors on the sentence defendant would likely receive if convicted. In reaching this holding, the majority explained "[t]his court has repeatedly held that the statutory penalty for crime is no concern of the jury." 143 Kan. at 608 (citing *State v. O'Keefe*, 125 Kan. 142, 145, 263 P. 1052 [1928]; *State v. Reuter*, 126 Kan. 565, 566, 268 P. 845 [1928]; *Levell v. Simpson*, 142 Kan. 892, 896, 52 P.2d 372 [1935]). Disagreeing only with the majority's conclusion that this error compelled reversal of the conviction, Justice William

West Harvey, in his dissenting opinion, offered a more descriptive explanation of the traditional assignment of duties and responsibilities between the jury and the court that arise from this boundary separating the guilt and sentencing phases of a criminal proceeding:

> "[I]n the division of duties and responsibilities between the court and the jury in the trial of a criminal case it is the function and duty of the jury to pass upon the facts shown by the evidence and to determine whether such evidence shows the defendant to be guilty or innocent of the crime charged, while it is the function and duty of the court to determine all questions of law which arise in the progress of the case, to approve or disapprove a verdict of guilty returned by the jury, and if it be approved, to determine what punishment under the law should be imposed, and to render a judgment in accordance therewith. For some offenses the court is authorized to grant paroles; for others it is not. For some offenses the court, within prescribed limits, must fix the specific punishment; for others the statutes fix the extent of the punishment without power of the court to change. If defendant previously had been convicted of a felony, that fact, when established, must be taken into account by the court in adjudging the punishment. All these matters respecting the punishment are for the court to determine and adjudge—they are not to be determined by the jury." 143 Kan. at 610-11 (Harvey, J., dissenting).

*O'Keefe* and *Hathaway* illustrate that this role-defining boundary between the guilt phase and sentencing phase of a criminal proceeding has been a firmly entrenched rule in our state's jurisprudence. That is, juries determine guilt while courts determine punishment, and the court's duty to impose punishment includes the duty to consider a defendant's prior convictions, if any.

Kansas courts have also relied on these role-defining boundaries to resolve legal challenges brought under our state's recidivist sentencing statutes. For instance, in *State v. Woodman*, 127 Kan. 166, 272 P. 132 (1928), this court addressed whether a charging document must allege the existence of a prior conviction before a defendant may be sentenced as a recidivist. There, the district court, in accordance with a 1927 habitual

offender statute, found that the defendant had been previously convicted of a felony and imposed a sentence twice the length of the authorized sentence for a first-time offense. On appeal, the defendant argued the charging document should have alleged that he had formerly been convicted of a felony. This court rejected the defendant's argument because the 1927 statute merely prescribed a greater punishment based on a prior conviction. Therefore, the fact of a prior conviction fell within the province of the court to decide punishment and did not have to be proven to the jury:

> "Our statute of 1927 does not create a new offense. It merely prescribes a greater penalty for one who is convicted a second time of the commission of a felony and a still greater penalty for one who is convicted of a felony for the third time. . . . In this state it is no concern of the jury what the penalty for a crime may be, and it is just as well that the jurors' minds should not be diverted from the question of defendant's innocence or guilt by facts concerning defendant's prior convictions of other felonies." 127 Kan. at 172.

Later, in *Levell v. Simpson*, 142 Kan. 892, 52 P.2d 372 (1935), our court directly addressed whether defendants have a constitutional right to have prior convictions proven to a jury for purposes of sentencing under a recidivist sentencing statute. There, the district court found the defendant had been convicted of two prior felonies and sentenced him to life imprisonment under a habitual offender statute. The defendant challenged his sentence, arguing he had a right under the state and federal Constitutions to have his prior convictions proven to a jury. Citing *Woodman*, this court held the defendant "had no such privilege under Kansas law." *Levell*, 142 Kan. at 894. The court reiterated that "'[i]n this state it is no concern of the jury what the penalty for a crime may be.'" 142 Kan. at 894.

Moreover, *Levell* recognized a distinction of legal significance when the fact of a prior conviction is used to sentence a defendant as a habitual offender, rather than to support an element of a distinct crime for purposes of conviction. *Levell* concluded the right to trial by jury is implicated only in the latter instance:

14

"The circumspection which our procedure exerts to keep the fact of any former convictions for felonies away from the jury is to protect the accused from the possibility that in his pending trial the jury might conceive a prejudice against him as a habitual criminal. But where a second offense is a separate and distinct crime it must necessarily be so charged in the information, and the proof to support the charge in all its details would have to be submitted to the jury. We have one such crime in this state—the persistent violation of the prohibitory law. A first offense against the prohibitory law (with exceptions not here pertinent) is a misdemeanor punishable by a moderate fine and jail sentence. But a subsequent infraction of the prohibitory law is quite a different and a more serious crime. It is a distinct felony. In such a case, all the formalities of a felonious charge should be pleaded in the information. Of necessity, too, every material allegation in such an information would have to be proved to the satisfaction of a jury. [Citations omitted.]" 142 Kan. at 895.

*Woodman* and *Levell* suggest Kansas has never recognized a general rule that sentence-enhancing prior convictions must be proven to a jury. Rather, the necessity of a jury finding depends on whether the prior conviction defines a separate offense. If it does, then the issue must go to the jury as it falls within the jury's traditional role to determine guilt or innocence of the crime charged. If, however, the prior conviction goes to the punishment only, the court may determine its existence as part of its traditional role to impose a legally appropriate sentence. And this division of duties exists for good reason—informing the jury that the defendant has a prior conviction when such conviction is not an element of the charged offense may unnecessarily prejudice the defendant.

Albano argues that reliance on these decisions is misplaced. She notes that *Woodman* did not directly address the constitutionality of the 1927 habitual offender statute and the defendant in that case was effectively challenging his charging document on due process grounds. As for *Levell*, she notes that that decision does not explicitly state that section 5 was the basis for the defendant's state constitutional challenge, and the

15

*Levell* court did not explicitly consider the common law in Kansas in 1859 in reaching its decision.

But Albano's criticism misses the mark. *Woodman* and *Levell*, along with *O'Keefe* and *Hathaway*, define the traditional functions of the jury in Kansas criminal proceedings, apart from those functions that fall within the exclusive purview of the court. These holdings confirm that the traditional role of a Kansas jury is to determine guilt, and the role of the court is to decide punishment and facts relevant to it, including prior criminal history. In turn, *Love* instructs that these well-established, traditional functions of the jury also define the scope of the jury trial right in Kansas, and legislative action that does not impair a traditional function of the jury does not violate section 5. Barring some evidence that these early twentieth century decisions reflected a departure from common law, they are reliable measures of the intended scope of rights guaranteed under section 5.

> *No Authority Substantiates Albano's Claim that* Woodman *and* Levell *Reflect a Departure from Common Law at the Time the Kansas Constitution Was Adopted*

We recognize that *Woodman* and *Levell* were decided over 65 years after our state Constitution was adopted. Nevertheless, they appear to be the earliest decisions following statehood to address the issue. And no authority suggests their holdings marked a departure from the common law in our state at the time of ratification. Albano directs us to several sources to support the existence of a contrary rule. However, these sources fail to substantiate Albano's argument.

> *United States Supreme Court Jurisprudence Does Not Substantiate Albano's Proposed Common-law Rule*

To support her argument, Albano primarily relies on Justice Thomas' concurring opinion in *Apprendi*. There, Justice Thomas advocated for a broader rule than the one

adopted by the *Apprendi* majority—he would find that prior convictions fall within the broader rule that any fact that would increase the punishment for a crime beyond the statutory maximum must be proven to a jury. 530 U.S. at 501, 519-21 (Thomas, J., concurring). For support, Justice Thomas cited state court decisions from the 1800s for the proposition that "the common-law understanding that a fact that is by law the basis for imposing or increasing punishment is an element." 530 U.S. at 502-06 (Thomas, J., concurring). He also argued that state court decisions from this same period demonstrate that "there was a tradition of treating recidivism as an element." 530 U.S. at 506 (Thomas, J., concurring).

Albano specifically relies on two of the state court decisions cited in Justice Thomas' concurrence. Albano quotes an excerpt from *Tuttle v. Commonwealth*, 68 Mass. 505, 506, 1854 WL 5131 (1854), in which the Massachusetts Supreme Judicial Court held that if a statute imposes a higher sentence for a subsequent conviction, then the prior conviction must be included in the indictment:

> "When the statute imposes a higher penalty upon a second and a third conviction, respectively, it makes the prior conviction of a similar offence a part of the description and character of the offence intended to be punished; and therefore the fact of such prior conviction must be charged, as well as proved. It is essential to an indictment, that the facts constituting the offence intended to be punished should be averred. This is required by a rule of the common law, and by our own Declaration of Rights, art. 12." 68 Mass. at 506.

The Court of Appeals found *Tuttle* provided little support for Albano's proposed common-law rule. The panel noted "the case was not necessarily challenging findings of previous criminal history at sentencing." *Albano*, 58 Kan. App. 2d at 130. Instead, the issue in *Tuttle* was whether a defendant could be ordered to serve a second offense or third offense violation penalty under a statute when the indictment had not charged him with a second or third offense. *Albano*, 58 Kan. App. 2d at 131. And the common-law

17

rule referred to in the opinion appeared to be the rule that the indictment must include "'the facts constituting the offence intended to be punished.'" *Albano*, 58 Kan. App. 2d at 131 (quoting *Tuttle*, 68 Mass. at 506).

Albano also cites *Hines v. The State*, 26 Ga. 614, 1859 WL 2341 (1859). There, the jury found a defendant guilty of a second offense after the district court instructed the jury that "'no proof of a former conviction was necessary.'" 26 Ga. at 616. The Georgia Supreme Court held that the district court erred because whether the defendant was previously convicted of the same offense was a question for the jury. 26 Ga. at 616. But the *Albano* panel noted that *Hines* does not rely on a common-law principle to reach its holding, so that decision does not establish the existence of a common-law rule requiring juries to find prior convictions. *Albano*, 58 Kan. App. 2d at 131.

On review, Albano does not challenge the Court of Appeals' assessment of *Tuttle* or *Hines*. Instead, she argues that "Justice Thomas' scholarship cannot be dismissed as easily as the Court of Appeals suggests." Albano notes that Justice Scalia authored a four-justice dissent in *Almendarez-Torres* in which he stated that at common law prior convictions had to be alleged in the indictment and proven to the jury at trial. 523 U.S. at 261 (Scalia, J., dissenting). Albano argues that if Justice Thomas is added to the four justices who dissented in *Almendarez-Torres* then, at one point in time, five United States Supreme Court Justices seemingly agreed, albeit in different decisions, there was a common-law rule that sentence-enhancing prior convictions had to be proven to a jury.

However, despite Albano's creative analysis, the Unites States Supreme Court has never reached such a holding in any decision. And the existence of such a common-law rule is vigorously contested. Indeed, Justice O'Connor authored a four-justice dissent in *Apprendi* that expressly criticized Justice Thomas' concurrence. She stated that while the decisions Justice Thomas relied on

18

"might reveal . . . the way American state courts resolved questions regarding the distinction between a crime and its punishment under general rules of criminal pleading or their own state constitutions, the decisions fail to demonstrate any settled understanding with respect to the definition of a crime under the relevant, pre-existing common law. . . .

"An examination of the decisions cited by JUSTICE THOMAS makes clear that they did not involve a simple application of a long-settled common-law rule that any fact that increases punishment must constitute an offense element. That would have been unlikely, for there does not appear to have been any such common-law rule. The most relevant common-law principles in this area were that an indictment must charge the elements of the relevant offense and must do so with certainty. Those principles, of course, say little about when a specific fact constitutes an element of the offense.

"JUSTICE THOMAS is correct to note that American courts in the 19th century came to confront this question in their cases, and often treated facts that served to increase punishment as elements of the relevant statutory offenses. To the extent JUSTICE THOMAS' broader rule can be drawn from those decisions, the rule was one of those courts' own invention, and not a previously existing rule that would have been 'codified' by the ratification of the Fifth and Sixth Amendments. Few of the decisions cited by Justice THOMAS indicate a reliance on pre-existing common-law principles. [Citations omitted.]" 530 U.S. at 528-29 (O'Connor, J., dissenting).

In sum, decisions such as *Tuttle* and *Hines* held that the fact of a prior conviction needed to be proven to a jury in those instances. But they did not indicate this holding rested on a pre-existing common-law rule. And to the extent that these decisions could be said to support the existence of a such a rule, none of these decisions indicate Kansas followed this rule when our state Constitution came into existence.

Moreover, the United States Supreme Court's historical treatment of recidivist sentencing statutes casts further doubt on the existence of Albano's proposed common-law rule. The Court has recognized that recidivism "is a traditional, if not the most

19

traditional, basis for a sentencing court's increasing an offender's sentence." *Almendarez-Torres*, 523 U.S. at 243; see *Parke v. Raley*, 506 U.S. 20, 26, 113 S. Ct. 517, 121 L. Ed. 2d 391 (1992) (stating that recidivist sentencing statutes "have a long tradition in this country that dates back to colonial times"). And the Court has stated in several opinions that "a charge under a recidivism statute does not state a separate offense, but goes to punishment only." 506 U.S. at 27; see *Oyler v. Boles*, 368 U.S. 448, 452, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962); *Graham v. West Virginia*, 224 U.S. 616, 629, 32 S. Ct. 583, 56 L. Ed. 917 (1912); *McDonald v. Massachusetts*, 180 U.S. 311, 313, 21 S. Ct. 389, 45 L. Ed. 542 (1901). These decisions suggest courts have traditionally determined the existence of prior convictions because such findings related only to the punishment for a crime—a function within the exclusive purview of the court.

Ultimately, we find the United States Supreme Court's jurisprudence does little to advance Albano's position. Rather than establishing that common-law juries had to find the existence of sentence-enhancing prior convictions, these decisions demonstrate only that the members of our nation's highest court disagree on whether such a rule ever existed. Moreover, these decisions confirm a long-standing tradition of treating recidivism as "going to punishment only," which echoes the distinction recognized by our court in *Woodman* and *Levell*.

*Other Sources Do Not Substantiate Albano's Proposed Common-Law Rule*

Albano also directs us to legal scholarship in support of her position. However, these sources do not establish that her proposed common-law rule existed in Kansas in 1859. Albano cites a law review article which states that "[a]t the end of the eighteenth century, every state followed the established common law rule: any prior conviction that would boost the sentence had to be alleged in the indictment and proven to a jury beyond a reasonable doubt." King, *Sentencing and Prior Convictions: The Past, the Future, and the End of the Prior-Conviction Exception to* Apprendi, 97 Marq. L. Rev. 523, 530

(2014). Of course, Kansas was not a state at that time. More importantly, the same article acknowledges that not only did several states depart from this rule in the nineteenth century, but that Kansas departed from this rule before it became a state. 97 Marq. L. Rev. at 552 n.140, 574.

Albano cites another article which states that under the "common law procedure [for applying recidivist statutes] once used by a majority of the states" prior convictions had to be included in the charging document and proven to a jury. Radice, *Recidivist Procedures Prejudice and Due Process*, 53 Cornell L. Rev. 337, 341 n.19 (1968). But nothing in this article suggests Kansas was one of the states to adopt this procedure. And our prior decisions indicate just the opposite. See, e.g., *Chance v. State*, 195 Kan. 711, 715, 408 P.2d 677 (1965) ("It has never been the rule in Kansas that a defendant in a criminal action must be apprised by the State prior to conviction that the State intends to invoke the habitual criminal act.").

Finally, Albano argues that "[i]f American common law had abandoned the traditional rule requiring that prior convictions be proven to a jury before our Constitution was adopted in 1859, the best place to look for evidence of that shift would be in our State's earliest criminal procedure statutes." She cites several statutes governing punishment for criminal offenses from the General Laws of 1862 and argues that these statutes show "no evidence of abandoning the traditional rule" that prior convictions must be proven to a jury. Of course, this argument presupposes the existence of Albano's supposed "traditional rule," which has not been substantiated. Moreover, none of the statutes she directs us to clarify whether the jury or the court must find the existence of prior convictions for sentencing purposes. See G.L. 1862, ch. 32, sec. 220-24; G.L. 1862, ch. 33, sec. 278. These statutes tell us little, if anything, about whether her proposed common-law rule existed in Kansas at the time of statehood.

21

Our review of the above sources leads us to conclude that "at best there was a historical split on whether prior convictions must be proven to a jury" at common law. *Albano*, 58 Kan. App. 2d at 133; see also *Woodman*, 127 Kan. at 172 (acknowledging "a contrariety of judicial opinion" on whether a prior conviction must be alleged in the indictment to sentence defendant under recidivist statute). Some sources indicate that state courts required sentence-enhancing prior convictions be proven to a jury. But other sources indicate this was traditionally an issue for the court. This historical split of authority suggests there was no settled common-law rule on this issue. See Bibas, *Judicial Fact-finding and Sentence Enhancements in a World of Guilty Pleas*, 110 Yale L.J. 1097, 1129 (2001) (arguing that precedent shows "there was no uniform rule of charging and proving all sentence enhancements at common law" and concluding that "[i]n short, the nineteenth-century tradition was not uniform, suggesting that the common law had no fixed rule on the subject").

Furthermore, even if some states did require juries to find the fact of sentence-enhancing prior convictions, these sources suggest Kansas did not follow this rule at the time of statehood. The historical record indicates Kansas either never followed such a common-law rule or abandoned the rule before our state Constitution came into existence.

CONCLUSION

There is no evidence to suggest the common law required sentence-enhancing prior convictions to be proven to a jury in Kansas criminal proceedings at the time the Kansas Constitution was adopted. To the contrary, our earliest decisions addressing this issue recognize the traditional function of the jury is to decide issues of fact relevant to guilt or innocence, and the traditional function of the court is to determine punishment and to make findings relevant thereto, including a defendant's criminal history. *Woodman, Levell*, and *Love* illustrate that these traditional functions provide an accurate

22

measure of the scope of protection afforded under section 5 of the Kansas Constitution Bill of Rights. Accordingly, we hold the KSGA provisions authorizing the court to make criminal history findings for purposes of imposing a sentence do not violate section 5 because such judicial findings do not impair the traditional functions of the jury in Kansas criminal proceedings. Albano's constitutional challenge necessarily fails.

The judgment of Court of Appeals is affirmed, and the judgment of the district court is affirmed.